**DAVISH v ARN**
(Two cases)

Ohio Appeals, 2nd Dist, Montgomery Co.

Nos. 1607 & 1608. Decided Oct. 2, 1940.

R. N. & N. K. Brumbaugh, Dayton;
G. W. Elliott, Middletown, for plaintiff-appellant.

McMahon, Corwin, Landis & Markham, Dayton, attorneys for defendant-appellee.

## OPINION

By GEIGER, J.

There are two appeals before this Court from orders of the Court of Common Pleas which will be treated together.

In case No. 83992, Court of Common Pleas, plaintiff instituted an action seeking judgment against the defendant in the sum of $75,000.00.

The petition was filed on May 29, 1936, and involves an action seeking to recover against a practicing physician for malpractice. The petition alleges that the defendant is a duly licensed surgeon; that on the 26th of October, 1933, the plaintiff was employed by the Hamilton Coke & Iron Company and on that day accidentally sustained an injury in the course of his employment by reason whereof his left arm was crushed and mangled and afterwards amputated a short distance below the elbow; subsequent to the operation and as a result thereof, plaintiff was left with what is known as a "painful stump", a condition in which the nerves in and about the stump of an amputated arm are imbedded in scar tissue in the process of healing; that the plaintiff was employed by a contributor to the Workman's Compensation Fund and was directed by the Industrial Commission of Ohio to submit to treatment by the defendant, employed by the Commission; that the condition from which the plaintiff was suffering is one frequently resulting from amputation, for which there is a well recognized treatment involving practically no hazard, being a minor operation known as "resection of nerves of the stump".

It is alleged that notwithstanding the defendant well knew of the procedure and that it was effective and without appreciable hazard, he falsely advised plaintiff and the Commission against resorting to such procedure, but falsely advised that the plaintiff's condition required resort to an operative procedure known as "laminectomy and a high cervical chordotomy" which procedure involved an operation upon the bones and vertebrae about the spinal cord and a manipulation of the cord in the region of the neck. Said operation was recognized by the medical profession as highly perilous procedure to be resorted to only in desperate cases, which fact the defendant well knew; that the defendant concealed from the plaintiff and Commission the highly hazardous nature of such operation and the disastrous effects which he knew would probably result therefrom, but falsely represented to plaintiff that the operation was without danger, etc., whereby the plaintiff was induced to submit to the performance of the operation of a laminectomy chordotomy, etc. Plaintiff was ignorant of the true nature of the operation and of its peril to his health and believed the statement of the defendant that it was without peril and would relieve the pain in the stump of the amputated arm and believed the statement that the operation directly concerned with the amputation was not satisfactory; that relying on these representations, on the 7th of June, 1935, he submitted to the defendant for the performance of the operation so recommended by him.

The process of the operation is described in detail and it is alleged that it was done negligently and it did not remove the sensation in the nerves of the stump, but caused them to become more acute and more constant and painful; that the defendant, by the operation, destroyed the sensory nerves of the entire left side of plaintiff's body and other nerves so that atrophy of the muscles resulted.

It is alleged that by reason of the negligence of the defendant, the plaintiff has become unable to control his movements and that his entire nerve system has been impaired and all possibility of his leading a happy and contented life has been destroyed; that said conditions are permanent; that by reason of the carelessness and negligence of the defendant and his misrepresentation and concealment, the plaintiff has been damaged in the sum of $75,000.00, for which he prays judgment.

The defendant answered putting in issue all the pertinent allegations of the petition.

The trial before a jury was begun on June 21, 1937, and was continued for fifteen full trial days and produced a bill of exceptions, now presented to this Court, totalling 1076 pages. On July 14, 1937, the jury returned a verdict in favor of the defendant. Thereupon the plaintiff on July 16, 1937 (wrongfully stated in the transcript as July 16, 1939) filed a motion for judg-

ment notwithstanding the verdict and a motion for new trial. The cause then remained dormant until September 12, 1939, at which time an entry was filed overruling the motion for judgment non obstante and overruling the motion for a new trial and ordering "that the petition of the plaintiff be dismissed and that the defendant go hence without day, etc."

On September 29, 1939, a notice of appeal was filed "from a judgment rendered by the Court of Common Pleas * * * on the 12th day of September, 1939. Said appeal is on questions of law".

### ASSIGNMENT OF ERRORS

The assignments of error are set out on page 30 of the appellant's brief, reciting ten specifications, with four subdivisions of specification No. 3, which may be briefly summarized: That the Court erred in overruling plaintiff's motion for judgment notwithstanding the verdict; in overruling the plaintiff's motion for new trial; in errors of the general charge in the specifications enumerated and in refusing and giving certain special charges and in rejecting competent evidence offered by the plaintiff and admitting incompetent evidence offered by the defendant; and that the verdict is against the manifest weight of the evidence.

We will pass upon each assignment of error, not however adhering to the order in which they are enumerated in the assignments.

There being over one thousand pages of testimony in this case in addition to a number of lengthy briefs, it will be impossible for the Court, within any reasonable limit, to note in detail all facts that may be pertinent to a discussion of the weight of the evidence. We are familiar enough with the evidence to enable us to outline the controversy between the parties and to analyze the specific errors complained of by the appellant.

### STATEMENT OF FACTS

We shall endeavor to detail the facts in the shortest possible space.

The plaintiff, Gordon Davish, now is and has been a resident of Butler County where in 1933, during his employment, he sustained an injury which required that his left arm be amputated at a point four inches below the elbow. This confined him to the hospital for a period of time. He first saw Dr. Arn, the defendant, in April, 1935, a year and a half after the amputation, at which time he complained to Dr. Arn of an intense pain in the stump of the left arm which caused him to lose sleep and to become nervous. Before seeing Dr. Arn, he consulted at least two physicians, one his family physician and another, Dr. Cook, who had amputated his arm. He was also examined by physicians from the Industrial Commission; he then drawing compensation for the loss of his arm. The examinations by the doctors of the Industrial Commission were of frequent occurrence. He described to the various physicians the intense pain that he suffered from the amputation and stated that he had received no relief from the various doctors to whom he had gone.

Davish had in March, 1931, suffered an injury to his knee from which in 1932 he mentioned pains similar to those resulting from the amputation of his arm.

He continued to receive compensation during the period between the amputation and the time of the operation and has received compensation since.

Dr. Arn, though living in Dayton and the plaintiff living in Hamilton, was recommended to him as a surgeon from whom satisfactory results might be obtained.

The simpler and more frequently practiced operation to relieve the pain in the stump of his arm was discussed, not only by physicians before he went to Dr. Arn, but with Dr. Arn. At that time, Dr. Arn stated, in rejecting the simpler operation, that it was his experience in regard to amputations that excision of the nerves and removal of neuromas had not resulted satisfactorily or stopped the pain in the amputated arm. Dr. Arn, at the request of the

Commission, made an examination of the plaintiff and reported to the Commission stating that in his opinion a high cervical chordotomy should be performed, which consisted of severing the nerves in the spinal cord, which convey to the brain sensations of pain. Such an operation does not affect the motor nerves. The technique of this operation appears at length in the testimony of Drs. Arn, Fischbein and others.

The first examination by Dr. Arn took place in April, 1935, and the Commission recommended the operation on May 6th. In the meanwhile, Dr. Arn told the plaintiff to study it over and report at a later date, which he did, and was inquired of whether he had decided about the operation and answered that he had not, telling Dr. Arn that he had consulted with other people about it and Dr. Arn suggested that he might see one of his patients, who was still in the hospital who had had a similar operation performed for relief of pain in the legs. This Davish did do.

The operation was performed on June 7th, 1935, about five weeks after the first consultation, at which time the Industrial Commission, Dr. Cook of Hamilton, plaintiff's family physician and his own family and friends, including his present counsel, knew of the contemplated operation.

Davish states that as a result of the operation he was relieved of pain for a short time, after which the pain returned. Davish then took up the matter, through his counsel, of receiving further and additional compensation from the Commission for the reason of his then condition caused by the operation. Davish at that time was being paid a scheduled compensation.

In May, 1936, the plaintiff brought his action against the defendant seeking recovery for malpractice.

The allegations of the petition have already been recited.

Counsel for the plaintiff, at the trial, urged that the proper procedure to correct the pain resulting from the amputation was excision of the nerves of the stump of the arm, rather than the operation of chordotomy which was resorted to and which was very much more serious.

## I.

It is submitted by plaintiff that it has been conclusively proved by evidence and admission of defendant that he made false representations which induced the plaintiff to submit to surgery at his hands; that such surgery resulted in damage for which the plaintiff is entitled to recovery. We have carefully read the testimony of the plaintiff.

Dr. Arn in explaining the operation proposed by him said that after this operation was done the patient would have no feeling in his arm for heat or cold, but that the motor nerves would not be affected. "He said that if he done the operating he would **guarantee** me I would never have no more pain in it", and could go back to his job.

Months after the operation, he went back to consult Dr. Arn telling him he still had pain and Dr. Arn gave him another examination about the same as he formerly made and he was instructed to come again. He recites the fact that on a number of occasions when he returned the doctor reported that he could not see him because he was too busy.

During the period of a year and a half between the time of his amputation and the time he went to see Dr. Arn, he called on numerous doctors, including Dr. Cook and Dr. Barnheiser, together with the doctors attached to the Industrial Commission. When he went to Dr. Arn he was suffering intense and constant pain. During the year and a half between the amputation and the operation by Dr. Arn, nothing had been done to relieve his pain except the use of pressure bandages and hot applications, which did no good. The week after the last consultation with Dr. Arn, and after a further consultation with his friends, he decided he wanted the operation performed.

He admitted on cross-examination that in spite of the allegation of his petition, the pain at the time of the

trial was no worse than before the operation. The plaintiff in addition to the doctors he consulted, consulted a faith healer who said he could cure him without the use of medicine, after the Arn operation.

We have detailed this evidence quite at length for the reason that it may apply to other objections and not require repetition.

The jury found that the doctor made no false representations which induced the plaintiff to submit to the operation and we do not find that it is necessary to disturb this finding.

II.

The second complaint is that the court erred in failing and refusing to submit the issue made upon the false representations to the jury.

Of course, if the court was persuaded that there was no evidence of false representations, there was no such issue to be submitted.

III.

The third complaint is that a verdict for the defendant notwithstanding the state of the case on this issue was manifestly against the weight of the evidence.

IV.

The fourth complaint is that the court erred in overruling plaintiff's motion for a directed verdict.

Manifestly, such a motion as recited in No. IV could not have been sustained by the court.

Whether the verdict is manifestly against the weight of the evidence will not now be finally determined.

MISREPRESENTATIONS.

The first alleged misrepresentation is the statement that the operation consisted of clipping nerves in the back of the neck and that the defendant in his description of the operation did not state that it involved the removal of any bones or of manipulating the spinal column. Plaintiff testified that he believed and relied upon the statements of the defendant. It is claimed that this misrepresentation falls within the

principles enunciated in **Wills v Van Nort, 100 Oh St 101** and in **Ober v Hollinger, 14 Abs 514.** We have examined these two cases and have no difficulty in discovering ample distinction between the cases cited and the case at bar. The doctor, before the operation was performed, gave the patient ample opportunity to acquaint himself with the nature of the operation, with its danger and other matters incident thereto, and plaintiff consulted other physicians and must have been well advised of the seriousness of the operation and that it was not merely the "clipping of nerves". It certainly was quite different from the situation in the two cited cases in which the surgeon in one case and the dentist in the other, after the patient had been anaesthetized proceeded further in the operations then being performed than the patient had been acquainted with as a possibility before submitting to the anaesthetic.

The patient seems to have been fully advised of the nature of the operation before he consented to submit to it and did so after a full discussion of the case with friends and advising physicians.

The jury found no actionable fraud.

SECOND MISREPRESENTATION.

The second misrepresentation urged by counsel, beginning at page 36, is that the operation would undoubtedly and completely alleviate the pain in the stump.

It is asserted by counsel for plaintiff that the defendant assured him that the operation would relieve all pain in his stump; that he would guarantee that he would never again have pain there; that after a short period in the hospital he could return to work. It is claimed by plaintiff that this statement is not only a misrepresentation, but also a special warranty in addition to the ordinary warranty of skill which is implied in the relation of physician and surgeon.

On the other hand, the defendant, in answering the second claimed misrepresentation, claims that Dr. Arn's full testimony was simply a statement of opinion, including his statement to the

Industrial Commission. It is asserted by defendant that there was no express warranty and that the law implies no such warranty; that the action was not based upon contract to cure and further that a good result was obtained.

The controversy on this particular point involves a consideration of a considerable portion of the testimony. Dr. Arn was cross-examined from pages 88 to 259 of the record. Much of the testimony was inconsequential so far as this case goes in that it was largely directed to Dr. Arn's understanding of the human anatomy and of the nervous system and his detailed explanation of the operation. It was also largely given over to a description of the plaintiff's condition after the amputation and the particular condition frequently incident to pains developing after amputation.

We have read the entire record of Dr. Arn's cross-examination and arrive at the conclusion that so far as the testimony is concerned there is a conflict of medical judgment as to what is the best method of treating this "phantom hand", resulting from amputation of an arm, whether it be by treating the stump or the nerves buried in the scar tissue or a progressive amputation of the stump or that it can only be successfully treated by the cutting of the sensory nerves in the spinal column. It may be said that after a severe and very learned cross-examination by counsel for plaintiff the only outstanding criticism he has of the technical description of several operations, irrespective of which is the best, is that Dr. Arn stated that the spinal cord was an inch and a half in diameter instead of three quarters of an inch. Of course, we being unfamiliar with medical matters, can not see that this failure in accuracy, if it was such, had anything to do with an actionable false representation, and the whole matter was a question for the jury.

As to the second misrepresentation, the jury arrived at the same conclusion as that of the first, that the evidence does not show any actionable fraud.

THIRD MISREPRESENTATION.

The third claimed misrepresentation asserted is that the operation would cause no loss of function in the arm except that of pain and temperature sense.

To this contention of the plaintiff, defendant counters that the evidence does not sustain the claim that there was any atrophy or paralysis as a result of the operation; that the jury had under observation for many days the physical condition of the plaintiff while he was on the stand and before the jury over a long period of time. It is also asserted that this ground of claimed misrepresentation necessarily involves a representation as to a future fact or a prediction. It is well understood that to be actionable a misrepresentation must be made as to an existing state of facts; that the same must be known to this person making it to be false, must be believed by the person to whom it is made, acted upon by him and result in his damage.

The jury found that the third alleged misrepresentation does not constitute actionable fraud.

FOURTH MISREPRESENTATION.

The fourth misrepresentation alleged is the claim made that the plaintiff testified that the defendant had assured him the operation would cause no effect except loss of pain and temperature sense in the stump and that the evidence shows conclusively that this result could not anotomically be secured on account of the peculiar structure of the nerve system which is detailed.

The jury found that this so called misrepresentation was not false.

FIFTH MISREPRESENTATION.

The fifth misrepresentation is the claim that defendant represented that the more simple operation upon the stump would not alleviate his pain and that this operation had never been done by the physician and that he made the representation notwithstanding that he

had not taken the trouble to learn whether the nerves were caught in the scar. It is claimed that the doctor not only never had performed that operation, but had never, in this particular case, resorted to x-rays or what is known as "novacain block" to determine whether or not the pain could be relieved by the stump operation.

Dr. Arn testified that on his examination he had eliminated in the diagnosis all causes of pain that might be successfully removed by an operation on the stump and that the "novacain block" was not used for reasons developed in the examination; that such operation would only relieve local pain and the plaintiff's symptoms were not local and that such treatment could not permanently alleviate his suffering.

The jury found this issue in favor of defendant. There is sufficient evidence to support the verdict.

### SIXTH MISREPRESENTATION.

The sixth misrepresentation was that the defendant told the plaintiff he had nothing to worry about; that after a short time in the hospital he would be able to return to work; that when the physician made this statement he knew that one of his operations, rhizotomy, had been discarded because of its high mortality and failure to accomplish results and further that with chordotomy there had been many unsatisfactory operations, which were discussed in medical journals. It is asserted that the making of these statements fell short of complete disclosure, which the law required of the defendant, and that the defendant submitted plaintiff to a destruction of his body frame work, a mutilation of his spinal cord and a destruction of his nerve roots, which by all authorities available no one is to be subjected to except in extreme cases.

We find these statements made by counsel to be rather more than warranted in a calm consideration of the evidence. The defendant, of course, claims that there is no evidence showing the asserted condition of the plaintiff. The jury did not find that such representation constituted the basis of recovery or false representation.

### SEVENTH MISREPRESENTATION.

As to the seventh misrepresentation, it is claimed that the defendant represented to the plaintiff that the operation he had in mind was for the same type and involved no greater peril than chordotomy for pain in the leg.

The jury found against plaintiff on this issue.

At this point, which concludes the special series of claimed misrepresentations, it might be well to advert to the interrogatories submitted to the jury and their answers. These may be found on page 1032, et seq. of the record.

Special interrogatory No. 1, requested by the **defendant,** was

"Did Dr. Arn make any false representations or false concealments relating to the operation?
A. No."

Special interrogatory No. 3, requested by the **defendant,**

"Was Dr. Arn negligent?
A. No."

Special interrogatory No. 1, requested by the **plaintiff,**

"Did Dr. Arn, in performing a laminectomy, rhizotomy and chordotomy on Gordon Davish as a first attempt to relieve or cure his painful left arm stump, follow the usual and accepted practice of physician and surgeons of ordinary skill, care and diligence in this or like communities under the same or similar circumstances?
A. Yes."

Special interrogatory No. 2, requested by **plaintiff,**

"Would physicians and surgeons, in this and like communities, of ordinary skill, care and diligence, under circumstances—similar to or the same as existed in Gordon Davish as found and reported by Dr. Arn prior to the opera-

654

tions of laminectomy, rhizotomy, chordotomy, resort to those operations, with the dangers incident thereto, as a first method to cure or relieve his pain?

A. Yes."

Special interrogatory No. 3, requested by plaintiff,

"Did Dr. Arn fail and neglect to use the methods of diagnosis to ascertain the location and cause of the pain in Gordon Davish's left arm, that are generally and ordinarily used by physicians and surgeons of ordinary skill, care and diligence in this and similar communities, under the same or similar circumstances?

A. No."

The general verdict was in favor of defendant, signed by twelve jurors and the interrogatories by eleven.

It must be conceded that the interrogatories go to the very heart of this controversy. Their answers do not conflict with the general verdict, but support it and until there is sufficient evidence marshalled to support the claim that the answers to the interrogatories are not supported by sufficient evidence, there can be no successful attack made upon the general verdict. The reasons set out in the first five grounds of the motion for new trial, summarized to the effect, are that the verdict was contrary to the manifest weight of the evidence, is not sustained thereby, is contrary to law and that said verdict and answers to interrogatories were rendered by reason of passion and prejudice and that they are contrary to undisputed facts shown by the evidence.

There was a long hotly contested law suit involving the testimony of many witnesses, many on abstruse questions of a technical nature and out of the mass of testimony adduced and the arguments of counsel, the jury rendered its verdict, and answered the interrogatories, all harmonizing to support a general verdict in favor of the defend-

ant. Even though we might have had doubt upon the question presented by the record, we would not be justified in setting aside the verdict as against the weight of the evidence, unless there be a strong showing in support of such action.

This position leaves the still remaining difficult question as to whether or not the court erred in other matters set up in the assignment of errors.

At the ouset, in order to determine whether the court's charge is erroneous or not, we must determine whether the court should have charged on two questions of liability of defendant on account of fraud and of express warranty. We have already pointed out the allegations of plaintiff's petition and will not now repeat them except to high spot the allegations upon which the recovery is sought.

It is alleged that defendant negligently and carelessly did all the things in such manner as to injure the plaintiff in the manner described; that by reason of the negligence and carelessness the plaintiff has become unable to accurately control his movements, all of which conditions are permanent. See colloquy between attorneys, pages 667, et seq. of Record.

By reason of the carelessness and negligence of the defendant and of his aforesaid misrepresentation and concealment, plaintiff has been damaged in the sum of $75,000.00.

It will at once be detected that the nature of the action has an important bearing upon the question as to whether the court below erred in refusing certain instructions.

In order to maintain an action for damages for fraud certain elements must be present. There must be actual or implied false representations relating to the present or past, material to the transaction; the representations must be made with knowledge of their falsity or with utter disregard as to whether they were true or false, with intent of misleading another; the person sought to be mislead must have relied upon the representations, with the right to so rely and injury must have

resulted. All these ingredients must be found to exist and the absence of any one of them is fatal to a recovery on that ground. The grounds of action of deceit are fraud and damage. When both concur the action will lie. O. Jur. Vol. 19, p. 336, §24.

A misrepresentation which is a mere matter of opinion will generally not constitute fraud nor can fraud be predicated upon representations in regard to matters of judgment. An opinion may, however, be fraudulently stated. There is, however, a distinction of statement of a material fact and a mere matter of opinion but the mere fact that a statement takes the form of an opinion does not always exclude it from being a fraudulent misrepresentation. To constitute actionable fraud the misrepresentation must be of a fact existing at the time the representation is made, or one which had previously existed. Representations as to what will take place in the future are regarded as predictions and not fraudulent. A promise to do something in the future does not in itself amount to false representation. Failure to make it good is a breach of a contract which must be enforced by an action on the contract, if at all.

Except where there is a duty to know the facts, representations honestly believed to be true, though misleading, will not ordinarily sustain tain an action for fraud, but when one is bound to know the truth mere belief in their truth will not excuse. A party has no right to state a fact to be true which he does not know to be such, and which may influence the conduct of the other party.

Actual fraud is the foundation of the action of deceit. It is not enough to show that untrue statements were made to the injury of the party who relied upon them, as the statement must be fraudulent as well as false and must be shown to be made with a fraudulent intent to deceive.

False representations must be believed by the person seeking relief. A person who makes his own investigation as to the truth of the representations can not be said to have relied upon them. There must not only be a reliance upon the fraudulent representation, but also the injured person must have a right to such reliance.

It is not necessary to further elucidate the principles governing actions for fraud as they are quite well understood, but they may be found more extensively discussed in 19 O. Jur. p. 308 et seq.

This being a case based upon alleged malpractice, we may profitably examine the law as to physicians, especially relating to malpractice. These matters are found discussed in 31 O. Jur. p. 453, §187, et seq.

Malpractice is a tort growing out of a breach of contract to exercise due care so that an action for the breach of the contract or of duty may be brought at the option of the plaintiff.

The general rule that the issues of a case are confined to the pleadings is applicable to actions for damages for malpractice. In an action for damages for malpractice, an injury is not presumed and the presumption of negligence is never indulged from the mere fact of the injury. A presumption is always indulged in favor of the conclusion that the defendant exercised due care and skill in his treatment of the patient.

Expert testimony is not essential to enable the jury to determine whether a surgeon has been guilty of malpractice and if the violation appears otherwise, plaintiff may refrain from calling expert witnesses.

In order to determine whether or not an issue has been made in reference to the alleged guaranty of cure, we make a search on this point and find it is stated in 31 O. Jur., p. 465, §206, substantially as follows: In the absence of a special contract, a physician or surgeon is not an insurer or guarantor of

his patient's recovery and the law does not raise from the fact of employment an implied undertaking to cure or to effect a partial healing nor is a surgeon, in the absence of an express contract, an insurer of a successful operation. The implied liability of the physician extends no further in the absence of a special agreement than that he would indemnify the patient against any injurious consequences resulting from his want of the proper degree of skill.

A surgeon is under an obligation, which the law implied from his employment, to exercise the **average** degree of skill exercised by members of the same profession in the light of the present state of medical and surgical science. **Gillette v Tucker, 67 Oh St 106.** (A sponge case).

The relation of surgeon and patient is one arising out of contract, express or implied. A surgeon is not an insurer or guarantor, but does agree to exercise the **average** degree of skill and diligence exercised by members of the same profession in the given situation. **Bowers v Santee, 99 Oh St 361.**

There is complaint made by the plaintiff that the Court refused to charge as to alleged guaranty. We have searched the petition for any allegation that approaches one setting up a cause of action to recovery under a guaranty of cure. It is true that in several places the plaintiff has testified that the physician **guaranteed** that he would have no future pain, but the issue is made by the pleading and not by testimony. The allegation nearest to one of guaranty, that we have been able to discover, is that the defendant falsely represented that said operation was without danger to his life or health and promised and assured the plaintiff that said operation would cause no detrimental effects whatever in any part of his body and that its only effect would be to remove the sense of pain from the stump of his arm and would leave him in perfect health. with all bodily functions unimpaired, except the function of the sensory nerves in the stump of the arm. This, we think, falls far short of a pleading of a special guaranty or a contract, other than the one implied by reason of their relations. "The surgeon is not an insurer or guarantor * * *."

With this resume of the law, we examine the assignments of error touching the charge of the Court, found on plaintiff's brief, p. 30, subdivision 3.

The Court erred in its general charge to the jury

(a) It refused to submit the issue on defendant's contract to cure.

The allegation is made that the Court refused to charge as stated.

Charge No. 3, submitted by the plaintiff and refused by the Court was to the effect that as a part of the law in this case if you find in consideration of plaintiff submitting to a surgical operation, the defendant promised and guaranteed that by such surgical operation he would relieve the pain in the plaintiff's arm and would not damage his strength and if you further find that the pain in the stump was not removed or that his strength or health is otherwise damaged as the result of the surgical operation, you should return a verdict in favor of the plaintiff.

The refusal of this charge presents a close question as to whether or not it was prejudicial error. There was some testimony to the effect that the defendant promised and guaranteed that the operation would relieve him of pain and that it did not, as a matter of fact, do so, but that the pain continued and his health was impaired. We are, however, of the view that taking into consideration the allegation of plaintiff and the testimony in this case and the special finding of the jury, that the refusal of the court to give the special charge requested was not prejudicial error.

(b) That the Court erred in its general charge on its refusal to submit the issue of the guaranty of results.

That matter is involved in the same refused charge that we have set out above, in relation to the refusal to submit the issue on the contract of cure.

(c) The matter criticised in Subdivision (c) is not involved in any refused charge, but relates to the general charge. We find there is sufficient in the general charge to cover the point complained of and if it is not, that the error was an error of omission and not of commission and that counsel should have called the attention of the Court to the omission at the time of trial rather than to wait and make it a subject of error.

(d) Is to the effect that the Court erred in instructing that the plaintiff's case must be proved by testimony of experts only.

There are certain characters of cases in which the condition of the patient may be proved by lay witnesses, but in a case of this nature, involving the intricate operation on the delicate nerve system of the plaintiff, the question as to the nature of the operation must be established by expert witnesses in order to determine whether or not the defendant was negligent. The jury, as non-experts, or any non-expert witness, could have no information as to whether or not the defendant was negligent in the method in which he handled the case.

The Court in his general charge instructed the jury that in considering whether the defendant exercised the particular degree of skill which he was bound to employ, "the jury must not set up a standard of its own but must be guided in that regard solely by the testimony of physicians and surgeons and experts or specialists, as the case may be, or recognized medical authorities; and if you are unable to determine from the testimony of the physicians and surgeons, experts or specialists or recognized medical authorities, acknowledged by experts as such and any other facts, circumstances, what constitutes ordinary care, skill and diligence under the circumstances of this case * * * then there is a failure of proof on the only standard of your guidance in this regard, and in the latter event, the evidence will be in-

sufficient to warrant any verdict for the plaintiff."

It will be noted that the court very carefully designated the particular things upon which he charged that expert testimony was necessary and that all those matters were subject of expert testimony and could not be testified to intelligently by a lay witness.

Another reason why the objection is of no weight, is that no non-expert witnesses were offered in relation to the character of the operation or its probable results.

The next assignment of error is No. 4,

"The court erred in refusing to give special charge No. 1 requested by the plaintiff."

At the same time we consider charge No. 1 we consider special charge No. 7 also requested by the plaintiff and given by the court. Special charge No. 1 as refused may be epitomized; The law is that physicians are bound to follow methods of treatment generally approved and so where the settled practice allows only certain courses of treatment any departure therefrom may be regarded as the result of inattention or as an experiment and for injurious experimentations upon his patient a surgeon is liable. Therefore if you find that Arn disregarded and refused to follow the generally approved methods "for painful arm stumps" or chose a method that was dangerous or one not used by surgeons of ordinary skill "and condemned by reputable medical and surgical treatises on the subject" and if you should find that the procedure increased his disability, etc., then your verdict should be for the plaintiff and against the defendant.

Special charge No. 7 which was given is identical word for word with charge No. 1, refused, with the exception that where the refused charge uses the phrase "for painful arm stumps" the allowed charge uses the expression "for plaintiff's condition". Special charge No. 1 contains the expression "and condemned by reputable medical and surgical treatises on the subject". Special

charge No. 7 omits this and contains the expression not found in charge No. 1, "in that or similar communities".

It is not necessary for us to pass upon the question as to whether the charge No. 7 as given imposed a greater burden upon the defendant than the law requires, inasmuch as any such error was not prejudicial to the defendant. We are unable to find that the expression in the refused charge "for painful arm stumps" instead of the expression "for plaintiff's condition" and the further statement in the refused charge "and condemned by reputable medical and surgical treatises on the subject" and the inclusion in charge No. 7 of the additional statement "in that or similar communities" so differentiates the two charges as to result in prejudicial error to the plaintiff on account of the refusal of the first, when the latter was given as requested.

We discover no prejudicial error in the refusal of the charge No. 1, especially when we consider ▬▬▬▬ that the practically identical but more accurately stated charge No. 7 was given.

No. 5 is to the effect that the court erred in refusing to give plaintiff's charge No. 3. This we have already considered and find that it was not erroneous.

No. 6 is that the court erred in giving the defendant's charge No. 2. This special charge claimed by the plaintiff to have been prejudicial error was as follows:

"The court says to you that unless and until he has been shown by the preponderance and greater weight of the evidence to have made false representations or false concealments, or to have committed negligent acts the law presumes that Dr. Arn did not do any of these things and you have no right to assume or presume that Dr. Arn did do any of these things simply because an operation was performed and the plaintiff claims that he still has pain."

In support of the claim that this charge was prejudicially erroneous, counsel for plaintiff cites **Petry v Mushman, 9 Abs 391** and the second paragraph of the syllabus in that case is quoted to the effect,

"A charge to a jury that there is a presumption that the defendant was not guilty of negligence places too great a burden upon the plaintiff and is erroneous."

This is different from the facts considered in the instant case in reference to the charge given. See **Ault v Hall, 119 Oh St 423** (a sponge case) where it is stated in the first syllabus,

"A presumption of negligence is never indulged from the mere fact of injury, but the burden of proof is upon the plaintiff to prove the negligence of the defendant and that such negligence is the proximate cause of the injury and damage."

**Huff v Austin, 46 Oh St 386,**

"Negligence is an affirmative fact and the presumption is until the contrary appears that every man will perform his duty."

**Stowell v Ohio Fuel Gas Company, 13 Abs 620,**

"The law presumes that persons upon whom the duty of exercising care is thrown do in fact exercise such care."

See also **Josephson v Danziger, 13 Abs 344** and **Martin v Heintz, 126 Oh St 227,**

"There is no presumption of negligence except such as arises from the facts proven. There is a presumption of freedom from negligence and such presumption stands until rebutted by evidence."

We discover no error in giving defendant's charge No. 2. It does not contain anything more ▬▬▬▬ than the usual statement of presumption in negligence cases.

The next assignment of error is No. 7,

"The court erred in giving Special Charge No. 4 requested by the defendant."

Charge No. 4 claimed to be prejudicially erroneous is to the effect that if Dr. Arn acted in good faith no damage should be awarded against him unless it is found by the preponderance of the evidence that in his treatment of the plaintiff he failed to exercise the skill which specialists and surgeons of ordinary care, skill and prudence in this or similar communities would have exercised under the same circumstances and further finds that such failure has resulted in damage to the plaintiff. It is claimed by counsel for the plaintiff that the court charged the issue of contract to cure and guaranty out of the case, since the charge was to the effect that if he exercised good faith he was liable only for negligence. It is claimed that it is the essence of a contract to cure or a guaranty that it warrants recovery in the presence of utmost good faith. We have already discussed at length the question of guaranty and contract to cure and it is not necessary to further allude to it.

The 8th assignment is that the court erred in rejecting evidence and the 9th is that the court erred in admitting incompetent evidence. It is stated on page 129 of the record that plaintiff offered the report of the defendant to the Industrial Commission concerning the condition of plaintiff as found in his first examination. This was excluded to the claimed prejudice of the plaintiff. We do not think so. It is simply a report made to the Industrial Commission probably upon a blank furnished by the Commission and was not as pertinent testimony as the other definite oral testimony of the plaintiff's condition. It is true that it is over the defendant's signature and may have contained statements that could be construed as against his interests. We find no prejudice in its refusal. While this statement of counsel is made under the heading "Errors in Admission of Evidence" there is no reference to any erroneous admission and the criticism was solely addressed to evidence excluded as we have above noted.

An error not set out in the assignment, but urged in argument, is the abuse of cross-examination by the defendant which counsel states "reached hitherto unknown degrees of scorn and vilification. The instances are too numerous to be specially referred to in the brief." We think that counsel's statement is hypercritical. We discover nothing in the cross-examination that would justify us in holding that the same constituted prejudicial error. Cross-examination has reasonable limitations but we do not find that these have been violated.

Counsel also urges that there was prejudicial error in the refusal of cross-examination to the plaintiff and states in connection therewith that he apprehends that the court excluded the questions because of their damning character. He points out specifically a question refused that related to the skill of a physician performing this operation who did not know the diameter of a normal cord or the cord in question. We think that the court was perfectly right in excluding such trivial cross-examination. The fact that the physician stated that the cord was twice as thick as it normally is had nothing to do with his action as a surgeon in this case.

We find no prejudicial error in the refusal to permit the questions to be answered. They were trivial and of no consequence and would only lead to the confusion of the jury.

Counsel asserts that there is error in the use of the word "average" in the charge of the court in speaking of the qualifications of the surgeon, claiming that the use establishes a degree of skill that is not as high as that required of a physician and counsel cites the use of the word on pages 1023, 1024,

# 660

1025, and 1026 of the charge. We do not find that the use of this word calls for a different degree of skill than that required of a physician.

In the case of **Gillette v Tucker, 67 Oh St 106**, we find in the first syllabus a statement that the surgeon is under an obligation to exercise the **average** degrée of skill, care and diligence exercised by the members of the same profession practicing in the same or similar locality.

In the case of **Hier v Stites, 91 Oh St 127**, the word "ordinary" skill is endorsed which is equivalent to "average".

In **Bowers v Santee, 99 Oh St 361**, it is stated in the first syllabus that the surgeon is not an insurer or guarantor but does agree to exercise the **average** degree of skill exercised by members of the same profession. See also **Pantazatos v Jelm, 17 Oh Ap 258, Beach v Chollett, 31 Oh Ap 8,** and the comments thereon.

Counsel takes the position that there being few surgeons performing this operation among whom the defendant was one, that the defendant's skill constituted largely in the measure by which the average should be ascertained. We do not consider that the word "average" skill related only to the surgeon performing this operation but to the average skill of surgeons performing surgical operations of like character.

The 10th assignment is that the verdict and judgment are manifestly against the weight of the evidence. There is a vast amount of testimony, some in sharp conflict, but out of it all the jury arrived at the verdict which seems to us manifestly expressive of the careful consideration of the evidence. We could not justly extend the length of the opinion to examine and comment upon all of the evidence given in this case. Sufficient it is to say that in our judgment, the verdict is not manifestly against the weight of the evidence. The assignment of error on that ground must be overruled.

COURT OF APPEALS No. 1608.
COMMON PLEAS COURT No. 89259.

## ACTION TO SET ASIDE VERDICT AND FOR A NEW TRIAL.

Plaintiff states that the facts hereinafter set out, material to said cause, were not discovered until the month of October, 1938, and could not with reasonable diligence have been discovered.

The plaintiff repeats substantially the allegations of the original petition in reference to the operation then submitted to by him and alleges that in October, 1938, the Commission authorized a surgeon to perform on the stump said operation known as "resection of nerves of the stump" and at said time such operation was performed; that upon its completion the surgeon reported the favorable result of such operation by separate reports attached to plaintiff's petition; that the evidence disclosed by said reports of the last operation are material to the action in that they verified the plaintiff's allegation of the original petition and could not have been discovered until after the operation of October, 1938.

Plaintiff says that he is now wholly free from pain in the stump of his arm and that his health has been restored insofar as the same can be, having regard to the injuries incident to the operation performed by the defendant.

Plaintiff alleges that one of the issues in the cause related to the proper diagnosis before the original operation; that it has now been approximately four years since the incorrect diagnosis was made, but that since such time no symptoms have developed of any condition predicated by the incorrect diagnosis; that he now suffers only from the physical damage caused by the operation and that by reason of these facts subsequently disclosed, the defense advanced in the trial has been disproved. Plaintiff prays that the ver-

dict be set aside, held for naught and for a new trial.

On September 12, 1939, the entry discloses that the cause came on to be heard upon the petition to vacate the verdict rendered for the defendant in cause No. 83992, the grounds of the petition being evidence discovered since the term, and that the evidence was heard and the cause argued whether or not the newly discovered evidence warranted the vacation of the verdict and the granting of a new trial and the Court, "does find that said alleged newly discovered evidence does not justify the vacation and setting aside of said verdict for the defendant and the granting of a new trial" and it was ordered that the petition of the plaintiff be dismissed. On the same day motion for new trial was filed.

On September 14, 1939, the following entry was made:

"This cause came on to be heard upon the motion of the plaintiff for a new trial or rehearing of this cause; in consideration whereof the Court does overrule said motion to which action of the Court the plaintiff excepts."

On September 29, 1939, the following notice of appeal was filed:

"The plaintiff hereby gives notice of appeal to the Court of Appeals from a judgment rendered by the Court of Common Pleas in the above cause on the 14th day of September, 1939. Said appeal is on questions of law."

It will be noted that the final entry was made on the 12th day of September. 1939, and that the entry of September 14, 1939, was simply the overruling of the motion for new trial. We have, therefore, the situation of a notice of appeal being given from a definitely stated entry, which is not the final entry in the cause, but is an entry overruling a motion for new trial.

This Court has frequently been called upon to pass upon the question as to whether such a notice perfects an appeal to this court.

In the very recent case of Mesoda Mosey v Hiestand, Court of Appeals of Preble County (not yet reported) this Court said:

"Wherever the notice of appeal has been addressed to a specific entry of a certain date, we examine that entry to ascertain whether or not it is a final entry. The overruling of a motion for new trial is not a final entry, consequently the notice has no efficacy in lodging this case in this Court. We are without authority and are impotent to make any order, and must on our own motion dismiss the appeal. See **Mahaffey v Stine, 28 Abs 361; Anderson v Local Union, etc., 29 Abs 364; Hoffman v Knollman, 135 Oh St 170.**"

See also the still more recent case of **Liesman v Village of Brookville, No. 1619, Court of Appeals, Montgomery County. (32 Abs 343).**

While the last cited case was not identical with the situation presented in this Court in this case, yet it is a recent declaration of this Court that the overruling of a motion for new trial is not a final entry and that notice of appeal from an entry so overruling a motion for new trial does not perfect an appeal.

We, therefore, conclude that the issues made and the determination of the court below in case No. 1608 are not properly before this Court and that all the Court may do is, of its own motion, dismiss that appeal. We will, therefore, not consider any of the evidence touching the last operation which plaintiff claims is newly discovered evidence which would entitle him to a new trial. The cause in this Court must proceed solely upon the original cause of action.

As an additional reason, we are of the opinion that the alleged newly discovered evidence is simply cumulative. It may be stronger than any evi-

dence offered in the original trial but still is simply cumulative.

We, therefore, arrive at the conclusion that there is no error in the face of the record prejudicial to the interests of the plaintiff. Judgment of the court below affirmed.

HORNBECK, PJ. and BARNES, J., concur in judgment.