[No. 22197. Department Two. February 6, 1930.]

E. W. BREAR *et al.*, *Appellants*, v. PAUL SWEET *et al.*, *Respondents.*[1]

*Gus L. Thacker*, for appellants.

*Roberts, Skeel & Holman, Dysart & Ellsbury*, and *Frank Hunter*, for respondents.

[1]Reported in 284 Pac. 803.

FRENCH, J.—This is a malpractice action. The respondent Paul Sweet is a physician and surgeon and conducts the Sweet Clinic. Eva Brear went to the hospital conducted by the Sweet Clinic and, upon an examination being made, it was discovered that she was suffering from what appeared to be a cancerous growth in the uterus, and it was found necessary to remove the uterus. This operation was performed by respondent, and it was charged that, in performing such operation, "the defendant carelessly and negligently cut the bladder of the plaintiff, making a large hole therein through which the bladder leaked."

It was further charged that there was certain carelessness and negligence in the treatment administered thereafter, but at the end of all of the testimony, this portion of the complaint was withdrawn from the jury. On the first question, however, as to the carelessness in performing the operation by cutting the bladder, the jury returned a verdict in favor of the plaintiff for two thousand dollars. Motion for judgment notwithstanding the verdict being made and granted, this appeal follows.

It may be well stated at the outset that the doctrine of *res ipsa loquitur* does not apply to an action such as this, and the mere fact that a bad result may follow an operation is not of itself evidence of negligence. *Markart v. Zeimer,* 67 Cal. 363, 227 Pac. 683; *Inglis v. Morton,* 99 Wash. 570, 169 Pac. 962; *Thompson v. Virginia Mason Hospital,* 152 Wash. 297, 277 Pac. 691.

The bad results following this operation were that, about eight or nine days after the operation had been performed, the urine started to leak, and thereafter it was discovered that the appellant Eva Brear was suffering from vesicovaginal fistula. All of the witnesses testifying on both sides in this case, and there were

eminent surgeons so testifying, agreed that such a fistula might have been caused by a cut made accidentally by the surgeon in operating, by an unavoidable infection incident to the operation, by infection independent of the operation, by sloughing due to the natural trauma incident to the operation, or through other unavoidable causes.

The case was tried, however, on the theory, and this is in harmony with the complaint, that the doctor performing the operation carelessly cut the walls of the bladder. The only testimony that we are able to find in the record indicating that the doctor might have cut the walls of the bladder is the purported admission of Dr. Sweet made thereafter to the appellant Eva Brear, where, speaking of the conversation had with the doctor some time after the operation, she states:

"Q. Now, at the time he made the examination did you have any further conversation with Dr. Sweet? A. Well, in reference to that he told me how he cut the bladder. Q. Now, you tell the jury just exactly what the conversation was that you had with him? A. He made an examination and he said there was a hole in the bladder, 'But,' he said, 'That won't be hard to heal.' He said, 'I can heal it with granulation.' I asked him how on earth the hole got in the bladder. He avoided the question. I said, 'How did the hole get in the bladder?' He said, 'I cut too close, but', he said, 'You needn't worry, I can heal that up.' Q. Who else was there at that time? A. My husband."

And later on she testified:

"A. Well, later on, after he saw Dr. Partlow, he said Dr. Partlow told him he had cut the bladder. . . . Q. Is that a part of the same conversation? A. Yes. Q. Go ahead and tell the balance. A. And I said, 'So you did; you told me you did,' and he said, 'No, radium caused that.' I said 'radium didn't cause it, that bladder leaked before I ever had radium.'"

The husband, called to the witness stand, testified:

"Q. Just tell the jury now what occurred when you went back to see Dr. Sweet at that time? A. I went back on the 14th and Mrs. Brear said to Dr. Sweet,— 'There seems to be something wrong with my bladder, I don't know just what it is.' She said, 'Perhaps it is weakness.' 'No,' Dr. Sweet said, 'it is not weakness.' He said, 'No, it is not weakness.' He said, 'Does the urine come in gushes?' And my wife said, 'Yes.' 'Well,' he said, 'We will make an examination and see what is wrong.' So he made an examination. Q. Then what did he say? A. Wait just a minute. He said there was a small hole in the bladder and then he said that would be easy healed. Q. Did she say anything to him about how it got there or anything? A. Oh, yes, she asked him how the hole got there in the bladder. Q. What did he say? A. He said 'We cut too close and it broke through,' 'But,' he said, 'we will put a catheter in the bladder.' . . ."

And on cross-examination the witness stated:

"Q. Now, Mr. Brear, do you want to tell this jury that Dr. Sweet told you that he cut the bladder? A. No, sir. Q. You don't want to give that impression to this jury? A. No, sir."

The evidence further shows that, immediately after the operation, a retention catheter was employed, and that, after this was finally removed on the third day, appellant voided naturally until the evening of the eighth day after the operation, when urine was discovered leaking from the vaginal tract. The consensus of medical testimony is that the history of the patient during the seven or eight days immediately following the operation conclusively shows that the bladder was not punctured during the operation. All of the physicians who testified on both sides united in saying that, in an operation such as this, it is necessary to peel as close to the bladder as it is possible to do without injuring the walls of the bladder. Two physicians who assisted in the operation, the nurse, and Dr. Sweet

testified that the walls of the bladder were not cut during the operation, and all of the physicians who testified agreed that the history of the case so indicated. The consensus of all of the medical testimony on both sides of this case is that vesicovaginal fistula may follow a hysterectomy for cancer, and the fact that it does follow is no evidence of lack of skill in the performance of the operation.

■ The law is well settled that facts such as these relating to difficult operations call for knowledge far beyond the ordinary layman, and that resort must be had to the testimony of expert witnesses for light on the question whether or not the respondent has been guilty of negligence. *James v. Grigsby,* 114 Kan. 627, 220 Pac. 267; *Dishman v. Northern Pacific Beneficial Ass'n.,* 96 Wash. 182, 164 Pac. 943.

■ We are unable to find any evidence in this case from which the jury would be permitted to find that the bladder·was cut during the operation. There was no immediate escape of urine, no manifestations of a cut, and the two attending physicians, the nurse, and the operating surgeon all testified that there was no cut. No surgeon who testified on either side of the case, having before him the full history of the case as well as the result of examination made, would venture the opinion that appellant's bladder had been cut. Indeed most of them united in saying that the history of the case indicated the contrary.

The nearest that any physician came to testifying as to any act of negligence was a suggestion on the part of one of the medical experts called by the appellant, who testified that the operating surgeon might have peeled too close to the bladder and thus somewhat weakened the walls. But this was not the theory on which the case was tried or submitted to the jury, and is not the theory of the complaint. The charge of negli-

gence is that, while performing the operation, the bladder was cut, and it was on that theory that the case was submitted to the jury; all other questions of negligence were withdrawn from the jury and the only assignment of error is the granting of judgment n. o. v.

We can find no evidence to substantiate the charge that the bladder was cut during the operation.

The judgment notwithstanding the verdict will therefore stand.

MITCHELL, C. J., FULLERTON, and MAIN, JJ., concur.