HENRY C. WINTERS, A MINOR, BY SAMUEL L. WINTERS, HIS FATHER AND NEXT FRIEND, APPELLANT, v. WILLIAM T. RANCE, APPELLEE.

FILED NOVEMBER 24, 1933. No. 28688.

*B. S. Baker* and *S. L. Winters*, for appellant.

*Kennedy, Holland & De Lacy, contra.*

Heard before GOSS, C. J., ROSE and PAINE, JJ., and BEGLEY and HORTH, District Judges.

PAINE, J.

This is a damage action, brought by the father and next friend of a minor, for malpractice in setting a frac-

tured elbow. After a trial in the district court, the jury returned a verdict for the defendant.

On the afternoon of June 30, 1927, the plaintiff, a 7-year-old boy, fell out of a tree and broke his right arm at the elbow. The father, Samuel L. Winters, an Omaha attorney, was out of town, and the mother called Dr. William T. Rance, the defendant and appellee, who set the broken arm at the home in the evening, and the next day took the lad to the hospital and reset it.

In the petition the plaintiff charges that the defendant wrongfully, carelessly, and negligently bandaged the arm and elbow so tightly that it stopped all circulation in the arm, the fingers at times being blue-black, and continued this until it caused ischemic paralysis, followed by Volkmann's contracture; that this resulted in the loss of the power to use the hand, the same being hopelessly crippled.

The defendant in the answer alleges that the fracture was at the lower end of the humerus; that it was almost compound, and was a Y-shaped fracture, and that, he carefully and properly treated the same, and was guilty of no negligence of any kind in the treatment thereof. No reply was filed.

The trial of the case developed into a battle between experts. The plaintiff presented Dr. William T. Coughlin, director of surgery at Washington University, and who has been for some years surgeon-in-chief at St. Mary's Hospital, St. Louis, and Dr. John J. O'Hearn. The defendant called as expert witnesses professors of surgery and of orthopedic surgery from the two medical schools in Omaha, and other surgeons of standing.

The facts as disclosed by the evidence show that at the lower end of the humerus, which is the large bone in the upper arm, there are two knobs, called condyles, and this fracture went across the shaft of the humerus and extended in a Y shape down into the joint, and it is technically known as a supra-condylar Y-shaped fracture. This is the most serious type of fracture one can have in the region of the elbow. In addition, the skin was caught

in this fracture, and a superficial vein was pierced, and there was discoloration when the defendant arrived in response to the first call.

The evidence further disclosed that, upon being called to the home, Dr. Rance set the fracture and used adhesive tape at the wrist and on the outside of the arm to hold it in position, no tape going clear around at either place, but just to give support for a piece of tape to go over the shoulder and hold the hand up to the chest. By observing the radial pulse, he found it was not as strong as that in the other arm, so he cut the tape and lowered the arm a little until the radial pulse in both arms was the same. The arm was then supported in a loose sling. Dr. Rance told the mother that he would have the boy taken to the hospital the next morning for X-ray pictures. There it was set in the dark room, with the assistance of a fluoroscope, and after Dr. Rance had set it, Dr. Duncan, an expert, thought he could improve it a little, and did so. The arm was then taped up as before, with the tape going over the shoulder to hold the arm flexed, and again a cloth, about the size of a dish-towel, was made into a loose sling in which to rest the arm in what is known as Jones' position. After three days the swelling began to recede. Nine X-rays were introduced, showing about a 99 per cent. reduction of the fracture. Volkmann's contracture resulted, drawing up the fingers. This frequently follows a severe injury in the elbow joint when ischemic paralysis occurs, which is due chiefly to local and temporary deficiency of the blood.

It is admitted by the experts of both parties that the method used by Dr. Rance in suspending the arm after setting the fracture is the method first described by Sir Robert Jones, of Liverpool, and is an approved method. Dr. Coughlin, plaintiff's expert, testified, by deposition taken in St. Louis, that in this particular fracture the surgeon is allowed to get the broken parts as nearly in their natural position as possible, by such a method as may be best in each particular case; that there is a wide

liberty of choice. At the time that he was testifying, Dr. Coughlin stated that he then had a patient with the same type of fracture, who was in pain and was delirious and screamed in the night, and the evidence in the case at bar showed that the plaintiff suffered great pain.

Dr. O'Hearn testified that in his opinion the Volkmann's contracture was produced by interference with the return circulation of the blood, and while it was thought that tight bandaging might produce it, yet it sometimes occurred when there was no bandaging at all. The plaintiff's witnesses failed to point out wherein any of the technique used by the defendant, Dr. Rance, was wrong.

In the motion for a new trial, instructions 1, 3, 4, 7, 9, 10, and 14 are attacked, as well as certain errors in the trial of the case. Plaintiff insists that the court narrowed the issues submitted to the jury too strictly, in that the instructions confined the question that the jury were to pass upon, as far as negligence was concerned, solely to the circular bandage referred to in the testimony, when the petition charged other acts of negligence in the treatment of said arm.

The plaintiff, in his petition and his evidence, stressed the circular bandage, and in permitting the case to go to the jury the trial court rightly limited the jury to the one question upon which it would allow a verdict for the plaintiff to stand.

The burden of proof in a malpractice case is upon the plaintiff, first, to prove the negligence in the treatment as alleged, and, second, to prove that this negligence was the proximate cause of the injury complained of.

When a case demands the skill and judgment of a surgeon, with respect to the employment of scientific technique of which a layman can have no knowledge at all, then such negligence must be proved by expert witnesses. *Tady v. Warta,* 111 Neb. 521; *McDaniel v. Wolcott,* 115 Neb. 675; *Snearly v. McCarthy,* 180 Ia. 81; *Merriam v. Hamilton,* 64 Or. 476; *McGuire v. Rix,* 118 Neb. 434; *Schrage v. Miller,* 123 Neb. 266.

Dr. Duncan, a leading expert, testified positively that the Volkmann's contracture was caused by the injury itself, and that the bandage did not have anything to do with it. *Hilmer v. Western Travelers Accident Ass'n,* 86 Neb. 285.

In the case at bar, a large number of medical authorities were used in the examination of experts, and quotations from such authorities were embodied in the questions put to such experts. While medical books are not admissible in evidence as independent evidence of the opinions expressed therein, yet the cross-examiner may properly use these text-books in an effort to contradict an expert witness. If an expert has based his opinion upon a particular authority, then a paragraph from such authority could be read in evidence to contradict him. *Kern v. Pullen,* 138 Or. 222, 82 A. L. R. 434; *Oliverius v. Wicks,* 107 Neb. 821; *Van Skike v. Potter,* 53 Neb. 28; 3 Wigmore, Evidence (2d ed.) 649; *Hutchinson v. State,* 19 Neb. 262.

The plaintiff calls our attention to the very recent case of *Van Der Bie v. Kools,* 264 Mich. 468, being a malpractice case founded upon a Volkmann's contracture, in which the judgment for the plaintiff was affirmed. A careful reading of this case discloses that, when originally set on October 24, 1931, the forearm of a 3-year-old child was wound with adhesive tape and the arm was flexed, and then the forearm was taped to the upper arm to hold it in this position, where it was left until November 9, when sores had developed and the bandages were removed, and in spite of approved treatment thereafter by a bone specialist, Volkmann's contracture developed. The court found that the malpractice consisted in flexing the forearm so acutely and bandaging it too tightly with adhesive tape for such a long period of time.

The facts in the case at bar are entirely different from those recited in this late case, for the defendant in the case at bar lowered the forearm until the radial pulse in the injured arm was the same as the one in the other

arm; that no adhesive tape was applied to hold the forearm to the upper arm, and that no adhesive tape at any place went entirely around the arm; that the arm was dressed at least daily.

It is proved in the testimony that Volkmann's contracture results frequently when no bandages of any kind are applied to the arm, and has resulted in some cases when the arm was not flexed at all, showing that the injury following a Y-shaped fracture of an elbow often results in such damage to the circulatory system as to produce ischemic paralysis, followed by Volkmann's contracture.

In the case at bar, an experienced trial judge limited the questions submitted to the jury to a greater extent than other trial judges might have done, but a careful examination of the evidence and the authorities discloses no reversible error in the admission of evidence, or in the giving of instructions, and the jury after deliberation returned a verdict in the defendant's favor.

This young plaintiff has been deprived of the use of this arm and hand by a most unfortunate accident, but the jury decided that his present condition was not the result of negligence on the part of the defendant. Finding no error in the judgment of dismissal, on said verdict, the same is hereby

AFFIRMED.