**MODRZYNSKI, Plaintiff-Appellee, v. LUST, Defendant-Appellant.**
**MODRZYNSKI, Plaintiff-Appellee, v. LUST, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 21294-21295. Decided July 18, 1949.

Philip C. Barragate, Cleveland, for plaintiffs-appellees.
McKeehan, Merrick, Arter & Stewart, Leroy B. Davenport,
R. Crawford Morris, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, PJ,

These causes come to this court on appeal on questions of
law from a final order of the common pleas court overruling
defendant's motion for judgment at the conclusion of plain-
tiffs' case, which motion was renewed and again overruled
at the close of all the evidence, and from a final order over-
ruling defendant's motion for judgment after the jury was
discharged because they were unable to agree upon a verdict.

The plaintiffs are husband and wife. They each brought
a separate action against the defendant for malpractice,
growing out of a major operation performed by the defendant
on Edna F. Modrzynski, the operation being what is known
to medical science as a total hysterectomy.

After the operation had been performed, and the plaintiff, Edna F. Modrzynski had been discharged from the hospital, she developed symptoms of burning, urging and incontinence. After an examination made by the defendant, he referred Mrs. Modrzynski to Dr. Laughlin, a specialist in Urology. Dr. Laughlin's examination disclosed the patient's bladder inflamed and infected. He also found several "bladder stones." He testified that he found no surgical damage to the bladder walls. This plaintiff's complaint of burning, urging and incontinence continued. Dr. Laughlin again examined her with about the same result, but a further examination a few days after September 20, 1946, almost three months after the first operation, disclosed a leak in the bladder, known to medical science as a vesicovaginal fistula. After two unsuccessful attempts by Dr. Laughlin to repair the leak, Mrs. Modrzynski went to another doctor who in April, 1946, successfully repaired the fistula.

After the defendant had finished the hysterectomy operation and the patient had been returned to her room, a catheter was inserted into her bladder and a mixture of blood and urine was discharged, which discharge continued until a few days before she left the hospital. Both plaintiffs testified that when this fact was called to the attention of the defendant directly after the operation, he said "I nipped her bladder."

The plaintiffs' cases are based upon their contention that defendant was negligent in puncturing the bladder during the hysterectomy operation and in failing and omitting to repair such puncture after it had been made.

The defendant's claim of errors are as follows:

"1. Error of said court in overruling the motion of defendant appellant made at the close of plaintiff's evidence that the jury be directed to return a verdict in favor of defendant appellant or in the alternative, that the evidence be withdrawn from the consideration of the jury and judgment be entered in favor of defendant appellant.

2. Error of said court in overruling motion of defendant appellant made at the close of all the evidence, that the jury be directed to return a verdict in favor of the defendant-appellant or in the alternative, that the evidence be withdrawn from the consideration of the jury and judgment be entered in favor of defendant-appellant.

3. Error of said court in overruling defendant-appellant's motion for judgment in his favor notwithstanding the discharge of the jury."

The burden of proving negligence and proximate cause in a malpractice case is upon the plaintiff, and the fact that an injury has been suffered will not, without affirmative evidence tendered by the plaintiff, as to the cause and effect of such injury, be presumed to have been the result of the doctor's negligence. **Ault v. Hall, 119 Oh St 422.**

By the great weight of authority, when the physician's want of skill or lack of care in the treatment of a patient or in conducting a major operation is in question, expert medical testimony is necessary to establish the claimed negligence of the physician and that such negligence has some causal connection with the claimed injury. What is or is not standard practice and treatment in a particular case, or whether the conduct of the physician measures up to the standard is a question for experts and can be established only by their testimony.

The only exception to such rule is that where the want of skill or lack of care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, expert evidence is not essential. 141 A. L. R. 5 at page 12.

There seems also to be great unanimity in the cases that the plaintiff must establish that the claimed injuries were a probable result of the physician's negligence when established and not that such result was a mere possibility.

The Supreme Court of Ohio in dealing with the need for expert testimony relating the injury to the alleged negligence of the physician and that such evidence must establish a probability, not a mere possibility of such causal connection, said in the case of **Drakulick v. Industrial Commission. 137 Oh St 82:**

"Since the issue of causal connection between an injury to a person's back and his subsequent death from cancer of the liver, involves a scientific inquiry, such causal connection must be established by the testimony of medical witnesses competent to testify on this subject.

Testimony that a person's death from cancer of the liver could have resulted from a previous injury to his back is insufficient to prove causal connection between such injury and death. The proof in such case must establish a probability, not a mere possibility of such causal connection."

In its opinion the court said at page 88:

"The medical testimony, even if the affidavit of Dr. Schwarzell had been admitted, was insufficient to prove causal con-

nection between the injury and the cancer which caused death. The testimony must establish a probability, not a mere possibility, of such causal connection. The testimony to the effect that the injury could have resulted in the malignancy does not meet that test."

"The case of **Drew v. Industrial Commission, 136 Oh St 499, 26 N. E. (2d) 793,** involving the inquiry as to whether an injury from a fall produced partial paralysis of the body, is authority for this proposition. Judge Williams speaking for this court said:

'Some of the expert medical witnesses testified that the paralysis could come from a fall causing a lesion or broken blood vessel in the brain; but there was medical testimony to the contrary. Of course, evidence that the paralysis could be caused by injury sustained in the fall consisted wholly of the opinion of physicians. Standing alone, such evidence would be insufficient to prove a traumatic origin of the paralysis. Proof of possibility is not sufficient to establish a fact; probability is necessary.' See also **Kuhn v. Banker, 113 Oh St 304, 312, 13 N. E. (2d) 242.**"

See also: **Wharton v. Lang, 18 Abs 147; Davish v. Arn, 32 Abs 646; McCarthy v. Industrial Commission, 33 Abs 103; Brazis Admr. v. National Tel. Supply Co., 38 Abs 57; Shepard v. Ins. Co., 152 Oh St 7** at page 12.

In the case of Brear et al v. Sweet et al, 155 Wash. 474, 284 Pac. 803, the court had for consideration almost the identical question that is presented in the case now being considered. The physician in that case was charged with negligence in removing a uterus, it being claimed that he negligently cut the bladder during the operation, making a large hole causing leakage. The plaintiff testified that after the operation, the defendant said to her "I cut the bladder." There was no medical evidence on this question other than that there was a possibility that the bladder might have been cut. There was also evidence that the plaintiff's condition could be accounted for by other circumstances.

"The evidence further shows that immediately after the operation a retention catheter was employed and that after this was finally removed on the third day, appellant voided naturally until the evening of the eighth day after the operation, when urine was discovered leaking from the vaginal tract. The concensus of medical testimony is that the history of the patient during the seven or eight days im-

mediately following the operation conclusively shows that the bladder was not punctured during the operation. All of the physicians who testified on both sides united in saying that in an operation such as this, it is necessary to peel as close to the bladder as it is possible to do without injuring the walls of the bladder. Two physicians who assisted in the operation, the nurse and Dr. Sweet, testified that the walls of the bladder were not cut during the operation and all of the physicians who testified agreed that the history of the case so indicated. The concensus of all of the medical testimony on both sides of this case is that vesicovaginal fistula may follow a hysterectomy for cancer, and the fact that it does follow is no evidence of lack of skill in the performance of the operation.

The law is well settled that facts such as these relating to difficult operations call for knowledge far beyond the ordinary layman, and that resort must be had to the testimony of expert witnesses for light on the question whether or not the respondent has been guilty of negligence. James v. Gigsby, 114 Kan. 627, 220 P. 267; Dishman v. Northern Pacific Beneficial Assoc. 96 Wash. 182, 164 P. 943.

We are unable to find any evidence in this case from which the jury would be permitted to find that the bladder was cut during the operation. There was no immediate escape of urine, no manifestations of a cut and the two attending physicians, the nurse and the operating surgeon all testified that there was no cut. No surgeon who testified on either side of the case having before him the full history of the case as well as the result of examination made would venture the opinion that appellant's bladder had been cut. Indeed, most of them united in saying that the history of the case indicated the contrary. The nearest that any physician came to testifying as to an act of negligence was a suggestion on the part of one of the medical experts called by the appellant who testified that the operating surgeon might have peeled too close to the bladder and thus somewhat weakened the walls. But this was not the theory on which the case was tried or submitted to the jury and is not the theory of the complaint. The charge of negligence is that while performing the operation, the bladder was cut and it was on that theory that the case was submitted to the jury, all other questions of negligence were withdrawn from the jury and the only assignment of error is the granting of the judgment n.o.v."

From the record before us we find no medical evidence relating to the nipping of the bladder as a probable cause of the

burning, urgency and incontinence suffered by the plaintiff subsequent to her operation or that there was any causal connection between such claimed nipping and the vesicovaginal fistula which was subsequently found by Dr. Laughlin. Nor is there any medical evidence to support the evidence of the plaintiffs that Dr. Lust admitting nipping Mrs. Modrzynski's bladder which claim is completely denied by the defendant.

It therefore was the duty of the court to grant the defendant's motion for judgment at the conclusion of receiving all of the evidence and the motion for judgment notwithstanding the disagreement of the jury.

For the foregoing reasons the judgment of the common pleas court is reversed and final judgment is entered for the defendant appellant. Exceptions. Order see journal.

McNAMEE, J, HURD, J, concur.