[No. 20-40110-1.    Division One.    December 31, 1969]
Panel 2

ALVIN J. SHOBERG et al., Appellants, v. DR. THORPE M. KELLY et al., Respondents.

John F. Raymond and D. Scott Sandelin, for appellants.

Williams, Lanza, Kastner & Gibbs, Henry E. Kastner and Gerald A. Palm, for respondents.

HOROWITZ, A. C. J.—Plaintiffs sued defendants alleging that the defendant, Dr. Kelly, a licensed and practicing physician and surgeon in Seattle, Washington, performed a hysterectomy operation upon the plaintiff wife, negligently puncturing her bladder. Defendants denied the alleged negligence and cross-complained for professional services by answer and cross-complaint filed Setember 2, 1966. Defendants propounded interrogatories and by answers sworn to on October 17, 1966, plaintiffs stated that they were

> not able to state in detail the negligence of the defendant Kelly, but the plaintiffs believe and, therefore, say that while the defendant doctor was operating on a fibroid tumor of the uterus and for removal of the uterus and left ovary, the doctor either cut through the bladder or stitched into the bladder when closing.

and

> At the present time the plaintiffs do not have the names of any medical experts upon which they can rely to establish the alleged negligence of the defendant doctor and if and when any expert witnesses are obtained, such information will be furnished immediately . . .

Defendants on July 19, 1967, filed their motion for summary judgment of dismissal of the plaintiffs' claim, supported by Dr. Kelly's affidavit. The affidavit stated that Dr. Kelly was a licensed physician and surgeon in Washington; detailed his other qualifications; reviewed the history of his professional services, including the hysterectomy operation performed for plaintiff wife, and stated:

> Standard medical procedure was followed by me in the care and treatment of this patient at all times. There was no departure from accepted medical practice during the surgery or at any other time. The complication of a fistula such as happened here occurs in a certain percentage of cases of such surgeries for a hysterectomy even though proper medical care is given. This patient's previous ureteral surgery and gynecological operations along with the size of her tumor increased the chances of such a complication occurring.

Plaintiffs resisted the motion by filing an affidavit of plaintiffs' attorney dated September 1, 1967. His affidavit stated that, subsequent to the hysterectomy, it was discovered:

> that there was a suture in the bladder from the previous operation conducted by Dr. Kelly . . . the suture was removed and a catheterization of the bladder undertaken . . . The condition was technically diagnosed as a "Vesicovaginal fistula." (fistula is a hole that protruded through the bladder).

Attached to that affidavit was a copy of a portion of the Ballard General Hospital records relating to the hysterectomy operation, as approved by Dr. Kelly before sending, and a copy of a letter from the medical records librarian from the Ballard General Hospital to the medical records department of the King County Hospital System. The letter set forth a summary of the record of Dr. Kelly's treatment of plaintiff wife at the Ballard General Hospital. Plaintiffs' counsel further asserted in the affidavit that "finding a suture through the bladder wall from the prior surgery by the defendant" is negligence or that "the doctrine of *res ipsa loquitur*" is applicable. The affidavit concluded with the statement that

> the plaintiff by and through her attorney of record is preparing a motion under rule 35 for the matter to be submitted to either the professional liability panel or the supplementary medical testimony panel so that the plaintiff can have the benefit of expert testimony to determine whether or not the defendant doctor's self serving affidavit followed standard medical procedure and accepted medical practice was in fact true.

Plaintiffs made no motion to stay hearing on the motion for summary judgment, nor did they explain their long delay without result in obtaining expert medical testimony to support their claims. The trial court, on the basis of the record before it, granted the motion. The judgment entered does not identify with particularity the matters considered by the trial court in passing on defendants' motion; nor have the plaintiffs filed a duly certified statement of facts

embodying the matters considered by the trial court. Instead, they purport to incorporate these matters in the transcript of the record on appeal.

Defendants in their brief and oral argument on the merits moved this court to dismiss the plaintiffs' appeal for failure to file a statement of facts embodying the record considered by the trial court in passing upon the motion for summary judgment. CAROA 34; *Kataisto v. Low,* 73 Wn.2d 341, 438 P.2d 623 (1968). Plaintiffs' counsel at oral argument conceded the motion was well taken, but requested leave to file the required statement of facts. *Neal v. Green,* 68 Wn.2d 415, 413 P.2d 339 (1966). To grant the motion, however, now that oral argument on the merits has been had knowing what is in the transcript, only to later rule that the contentions of the plaintiffs are untenable, would serve no good purpose. In the interest of economy of effort and expense, therefore, we have examined the plaintiffs' contentions on the merits in passing on the motion to dismiss the appeal. For the reasons next stated, we have concluded that summary judgment of dismissal was properly granted below and, accordingly, no good purpose would be served by granting plaintiffs' motion to file a statement of facts.

■■ In the absence of a properly supported motion to stay the hearing, the trial court had a right and duty to hear the motion for summary judgment on the basis of the showing before it. *Evans v. Rohrbach,* 35 N.J. Super. 260, 113 A.2d 838 (1955); *General Truck Sales Inc. v. American Fire & Cas. Co.,* 100 So. 2d 202 (Fla. App. 1958); *Robbins v. Jersey City,* 23 N.J. 229, 128 A.2d 673 (1957). The record before the court disclosed a hearsay answer by the plaintiffs that "the doctor either cut through the bladder or stitched into the bladder when closing"; and a further hearsay statement in the plaintiffs' attorney's affidavit that subsequent to the hysterectomy there was discovered a "suture in the bladder from the previous operation conducted by Dr. Kelly" followed by the removal of the suture and the catheterization of the bladder. Such hearsay was inadmissi-

ble for the purpose of establishing the truth of the facts stated. CR 56(e); *Loss v. DeBord,* 67 Wn.2d 318, 407 P.2d 421 (1965); *Stringfellow v. Stringfellow,* 53 Wn.2d 639, 335 P.2d 825 (1959). Furthermore, plaintiffs were under the necessity of showing at the minimum through a medical expert, or otherwise, that they had or would have medical expert testimony to prove the applicable standard of care and its violation. Without such expert medical testimony plaintiffs could not prove negligence and could not recover. *Douglas v. Bussabarger,* 73 Wn.2d 476, 438 P.2d 829 (1968); *Hayes v. Hulswit,* 73 Wn.2d 796, 440 P.2d 849 (1968); *Pederson v. Dumouchel,* 72 Wn.2d 73, 431 P.2d 973 (1967); *Brear v. Sweet,* 155 Wash. 474, 284 P. 803 (1930). Neither the trial court nor this court can hold, as a matter of law, that the applicable standard of care or its probable violation is in the common knowledge of lay triers of the fact so as to dispense with medical expert testimony. *Hart v. Steele,* 416 S.W.2d 927 (Mo. 1967); *Lince v. Monson,* 363 Mich. 135, 108 N.W.2d 845 (1961); *Siverson v. Weber,* 57 Cal. 2d 834, 22 Cal. Rptr. 337, 372 P.2d 97 (1962). Plaintiffs cite *Conrad v. Lakewood Gen. Hosp.,* 67 Wn.2d 934, 410 P.2d 785, 10 A.L.R.3d 1 (1966) as supporting their contention that Dr. Kelly's claimed misconduct in leaving a suture in the bladder wall at the close of the hysterectomy operation is prima facie negligence. *Conrad* was a case in which a surgical instrument was left inside a patient's body after closing a surgical incision. Unlike the instant case, no justification for leaving the surgical instrument in the patient's body was advanceable. In the instant case, however, Dr. Kelly's uncontradicted affidavit does advance a justification. Only a medical expert is competent to testify as to whether the justification is insufficient. The affidavit of plaintiffs' counsel which in effect stated that plaintiffs hoped to obtain needed evidence of negligence in the manner described, was not a substitute for expert medical testimony and therefore not an answer to the plaintiffs' motion. *McGuire v. McCollum,* 49 Del. 359, 116 A.2d 897 (1955).

■  Plaintiffs contend that even if the showing of negligence is insufficient, the doctrine of res ipsa loquitur is applicable so as to require a reversal of the summary judgment. We disagree. Before res ipsa loquitur is applicable in a medical malpractice case, the trier of the facts must be in a position on the basis of required and admissible evidence to make an inference of negligence if it wishes so to do. *Pederson v. Dumouchel, supra.* If the trier of the facts cannot make an inference of negligence because there is no such testimony, the doctrine is inapplicable. *Brear v. Sweet, supra; Siverson v. Weber, supra; Hart v. Steele, supra; Lince v. Monson, supra.*

The appeal is dismissed.

UTTER and STAFFORD, JJ., concur.

Petition for rehearing denied March 11, 1970.