348 So.2d 905 (1977)
Grace Irene THOMAS, Appellant,
v.
J. R. BERRIOS, M.D., et al., Appellees.
No. 76-1663.
District Court of Appeal of Florida, Second District.
June 29, 1977.
Rehearing Denied August 29, 1977.
*906 Charles P. Schropp, Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellant.
David W. Young, Blake & Ford, P.A., Tampa, for appellee J.R. Berrios, M.D.
GRIMES, Judge.
This case involves the extent to which expert testimony is necessary to prove the plaintiff's case in a malpractice action.
Appellant had come to Lykes Memorial Hospital in Brooksville with complaints of heavy menstrual periods lasting for five to seven days which were often accompanied by pain sufficiently severe to require her to remain in bed for up to three days. The appellee, Dr. Berrios, who specialized in obstetrics and gynecology, was called in as a consultant. Dr. Berrios recommended performance of a dilation and curretage (D & C) to rule out cancer or polyps as the cause of appellant's condition, to be followed by a hysterectomy if the results of the D & C were negative. The D & C was performed and proved negative. Dr. Berrios then performed a hysterectomy or surgical removal of the uterus.
Shortly following surgery, appellant began to suffer from an infection. It was finally determined that the cause of the infection was the presence of an opening or fistula in the left ureter which permitted urine to enter the body. Appellant was transferred to Tampa General Hospital where she underwent corrective surgery which consisted of attaching the damaged left ureter to the right ureter.
The appellant brought a malpractice action against Dr. Berrios. In his deposition, Dr. Berrios acknowledged that the appellant's ureter must have been damaged during the operation. He felt that the most likely cause of the injury was an inadvertent contact with the ureter by a clamp or a suture, though he could point to no specific incident during the course of surgery which would indicate how or when such contact might have occurred. He maintained that he had committed no act of negligence and cited statistics from various medical publications to the effect that injuries occur in one-half percent to five percent of the cases in which hysterectomies are performed without any negligence on the part of the operating surgeon.
The deposition of Dr. Finney, who conducted the corrective surgery, was also taken. Dr. Finney testified that he had been unable to see the actual fistula in the left ureter because it was obscured by scar tissue which resulted from the appellant's prior surgery. He stated that he could not say that the damage to the appellant's ureter was occasioned by any negligence on the part of other surgeons. He corroborated *907 Dr. Berrios' statistics concerning the incidence of unavoidable injuries occurring during hysterectomies.
The appellant filed an affidavit in which she stated that Dr. Berrios did not advise her prior to her hysterectomy of any problems which might arise from the operation. Dr. Berrios had admitted as much when he testified that he had not advised appellant of complications which could occur from the surgery because she had a history of anxiety. He stated that it was the customary practice in the community not to tell a prospective hysterectomy patient that there was a statistical possibility that a ureter might be cut in the performance of the operation. The court entered a summary judgment in favor of the doctor, and the appellant has prosecuted this appeal.
The appellant's case was primarily predicated upon (1) the failure to obtain an informed consent to the operation, and (2) negligence in the conduct of the surgery. The appellant submitted no expert testimony in support of either of these theories. Therefore, the main issues on this appeal are whether expert testimony is required in order to prove either the absence of informed consent or negligent medical treatment.

Absence of Informed Consent
In obtaining the consent to an operation or a course of treatment, a physician has an obligation to advise his patient of the material risks involved. Miriam Mascheck, Inc. v. Mausner, 264 So.2d 859 (Fla.3d DCA 1972); Bowers v. Talmage, 159 So.2d 888 (Fla.3d DCA 1964). The extent of the duty is aptly described in ZeBarth v. Swedish Hospital Medical Center, 81 Wash.2d 12, 499 P.2d 1 (1972), as follows:
"The duty of a medical doctor to inform his patient of the risks of harm reasonably to be expected from a proposed course of treatment does not place upon the physician a duty to elucidate upon all of the possible risks, but only those of a serious nature. Nor does it contemplate that the patient or those in whose charge he may be are completely ignorant of medical matters. A patient is obliged to exercise the intelligence and act on the knowledge which an ordinary person would bring to the doctors' office. The law does not contemplate that a doctor need conduct a short course in anatomy, medicine, surgery, and therapeutics nor that he do anything which in reasonable standards for practice of medicine in the community might be inimical to the patient's best interests. The doctrine of informed consent does not require the doctor to risk frightening the patient out of a course of treatment which sound medical judgment dictates the patient should undertake, nor does the rule assume that the patient possesses less knowledge of medical matters than a person of ordinary understanding could reasonably be expected to have or by law should be charged with having. Nor should the rule declaring a duty to inform be so stated or applied that a physician, in the interest of protecting himself from an overburden of law suits and the attendant costs upon his time and purse, will always follow the most conservative therapy  which, while of doubtful benefit to the patient exposes the patient to no affirmative medical hazards and the doctor to no risks of litigation. Thus, the information required of the doctor by the general rule is that information which a reasonably prudent physician or medical specialist of that medical community should or would know to be essential to enable a patient of ordinary understanding to intelligently decide whether to incur the risk by accepting the proposed treatment or avoid that risk by foregoing it. A doctor or specialist who fails to discharge this duty to inform would thus be liable as for negligence to the patient for the harm proximately resulting from the treatment to which the patient submitted... ."
The duty of the physician to inform and the extent of the information which may be required varies in each case depending upon the particular circumstances. Blye v. Rhodes, 216 Va. 645, 222 S.E.2d 783 *908 (1976). The factors involved in making this determination are often complicated and technical, and in any event involve considerations beyond the expertise of the ordinary layman who is uneducated in medicine. Consequently, we have no hesitation in following the lead of our sister court in Ditlow v. Kaplan, 181 So.2d 226 (Fla.3d DCA 1966), by holding that expert testimony is required in informed consent cases to establish whether a reasonable medical practitioner in the community would make the pertinent disclosures under the same or similar circumstances. Our ruling accords with those of most courts which have considered this issue. Annot., 52 A.L.R.3d 1084 (1973).

Negligent Treatment
In an annotation at 81 A.L.R.2d 597 on the necessity of expert evidence in a malpractice action not involving informed consent, the annotator points out that the overwhelming weight of authority supports the view that expert witnesses are essential to the plaintiff's case. Annot., 81 A.L.R.2d 597 at 601 (1962). The rule requiring expert testimony has often been applied where the negligence allegedly occurred during an operation. Id. at 631. However, the annotator goes on to point out that most courts recognize an exception to the rule in those cases in which a doctor's want of skill or lack of care is such as to be within the comprehension of laymen and to require only common knowledge and experience to understand and judge it. An obvious example of the exception to the rule is where an injury occurs to an unrelated part of the body which is not under treatment. Id. at 645.
Florida has adopted the principle that expert testimony is not always required to prove a case of negligent treatment, as contrasted to a charge based on an incorrect diagnosis or the adoption of the wrong method of treatment. In Atkins v. Humes, 110 So.2d 663 (Fla. 1959), our Supreme Court held that expert testimony was unnecessary to sustain a malpractice action predicated upon the negligent application of a cast which caused a pressure sore on the patient's arm resulting in a disability known as Volkmann's contracture and the negligent failure to relieve the pressure in the face of clear warnings of this condition. Reasoning that some instances of negligent treatment are so obvious as to render expert opinion unnecessary, the court said:
"... Jurors of ordinary intelligence, sense and judgment are, in many cases, capable of reaching a conclusion, without the aid of expert testimony, in a malpractice case involving a charge of negligence in the application or administration of an approved medical treatment... ."
The same principle was followed in Montgomery v. Stary, 84 So.2d 34 (Fla. 1956), where a doctor applied a hot towel to a newborn baby's arm for a prolonged period of time resulting in the loss of the infant's fingers and thumb. Accord, Dohr v. Smith, 104 So.2d 29 (Fla. 1958). In short, the effect of some medical treatment is so uncalled for that it doesn't take a doctor to tell a reasonable man that this occurred because of negligence.
Does ureter damage which occurs during a hysterectomy fall in this category? We think not. While there are other types of surgery which are more complicated, no one can dispute the fact that the removal of the uterus from a woman's abdomen is a significant surgical procedure. The record reflects that the ureter lies in close proximity to the uterus and that the ureter is not visualized during the course of the operation because it is covered in tissue. Dr. Berrios testified that in accordance with accepted procedure he identified the course and location of the ureter by feeling it with his glove covered fingers. He said he was confident that he never touched the ureter with an instrument or suture and that no clamp was placed closer than one centimeter away. Under these circumstances, to permit a jury without the benefit of expert opinion to conclude that the damage to the ureter occurred because of the doctor's negligence would be to permit speculation on a subject well beyond the jury's expertise.
*909 In Modrzynski v. Lust, 55 Ohio L.Abs. 106, 88 N.E.2d 76 (Ohio App. 1949), the court held that a trial judge had erred in denying a motion for directed verdict where the plaintiff failed to produce expert testimony that a fistula occurring in her bladder following a hysterectomy was the result of the doctor's negligence. The court stated:
"By the great weight of authority, when the physician's want of skill or lack of care in the treatment of a patient or in conducting a major operation is in question, expert medical testimony is necessary to establish the claimed negligence of the physician and that such negligence has some causal connection with the claimed injury. What is or is not standard practice and treatment in a particular case, or whether the conduct of the physician measures up to the standard is a question for experts and can be established only by their testimony."
In another case involving a bladder fistula occurring during a hysterectomy, the court in Siverson v. Weber, 57 Cal.2d 834, 22 Cal. Rptr. 337, 372 P.2d 97 (1962), said:
"It is obvious that neither the cause of plaintiff's fistula nor the question whether, in the light of past experience, it was probably the result of negligence by defendants is a matter of common knowledge among laymen... ."
In discussing the nature of a hysterectomy and the risks involved, the court in Dees v. Pace, 118 Cal. App.2d 284, 257 P.2d 756 (1953), said:
"An hysterectomy operation as disclosed by the medical testimony is a complicated one and it would lie beyond the realm of the common knowledge and experience of laymen as to whether or not this result would ordinarily occur in the absence of negligence. None of the doctors testified that in the small number of cases in which a fistula occurs that they are probably the result of negligence. On the contrary the undisputed expert testimony shows that a fistula is a recognized hazard in all hysterectomies, one of the calculated risks; and while it does not occur very often from any cause, it may occur where the operation is performed under ideal conditions by the most skillful surgeon without negligence on his part."
The appellant relies heavily upon a passage in Atkins v. Humes, supra, in which the Supreme Court cited Goodwin v. Hertzberg, 91 U.S.App.D.C. 385, 201 F.2d 204 (1952), as an example of a case in which a jury had a right to conclude that negligence occurred without the benefit of expert testimony. This case involved the perforation of the patient's urethra during an operation. We think that whatever significance the Supreme Court's reference to Goodwin may have had has been nullified by that same court's recent decision in Sims v. Helms, 345 So.2d 721 (Fla. 1977) (Opinion filed March 31, 1977). While Sims specifically dealt with a need for expert testimony in a case involving a doctor's choice of methods and procedure rather than the negligent administration of approved medical treatment, the court cited with approval several hysterectomy cases standing for principles precisely in accord with our view in the instant case. Among these were Riedisser v. Nelson, 111 Ariz. 542, 534 P.2d 1052 (1975); Halligan v. Cotton, 193 Neb. 331, 227 N.W.2d 10 (1975); and Shoberg v. Kelly, 1 Wash. App. 673, 463 P.2d 280 (1970). In Halligan, the court distinguished Goodwin v. Hertzberg, supra, on the ground that the doctor in that case had made factual admissions which could reasonably be interpreted as admitting a lack of skill and care. In the Riedisser case, summary judgment was entered for the doctor in the face of a record which supported the view that the ureter had been "nicked" during surgery.
The appellant cannot point to any evidence that Dr. Berrios failed to meet the appropriate standard of care in his performance of the hysterectomy other than the fact that an injury apparently occurred as a result of the surgery. As recently noted by the Supreme Court in Sims v. Helms, supra:
"... Negligence cannot be inferred from the fact that the surgery was unsuccessful or terminated in unfortunate results... ."
*910 Therefore, we hold that the appellant was obligated to furnish expert testimony in support of her claim of negligent surgery.

Propriety of Summary Judgment
For her final point on appeal, the appellant argues that even if expert testimony is held to be necessary to support her case upon both of the theories previously discussed, the granting of summary judgment was improper under the rationale of Holl v. Talcott, 191 So.2d 40 (Fla. 1966). In Holl, the Supreme Court emphasized the requirement of the moving party to prove the nonexistence of genuine issues of material fact before he becomes entitled to summary judgment. The summary judgment entered below does not conflict with Holl, because the facts in Holl were different and its principle has been preserved.
One of the movants' deficiencies in Holl was that their medical affidavits did not undertake to explain what had caused the plaintiff's comatose condition. While the medical evidence in this case did not explain what caused the damage to the appellant's ureter, the depositions did demonstrate that the cause could not be determined because of the scar tissue which obscured the site of the first operation. The Holl opinion on rehearing recognized that a doctor could obtain a summary judgment in a malpractice action by showing conclusively that the plaintiff is unable to present the requisite proof of the negligence charged in the pleadings. Moreover, in Holl the plaintiff did present the affidavit of a doctor in support of her charges.
We note further that both the Riedisser and Shoberg cases cited by the Supreme Court in Sims v. Helms, supra, involved summary judgments which were affirmed on the basis that the plaintiff had failed to come forward with medical testimony in support of the complaint.
In this case, Dr. Berrios filed his motion for summary judgment on July 10, 1975. The motion was set down for hearing on September 10, 1975. The appellant filed a motion for continuance for the purpose of obtaining additional time to prepare affidavits in opposition to the motion. The hearing was postponed and the motion was finally heard some nine months later in May of 1976. The only affidavit which had been filed by the time of the hearing was that of the appellant referred to earlier in this opinion. Had the appellant been able to find expert testimony in support of her position, she had ample time within which to present it to the court. Having failed to do so, she cannot now complain that summary judgment was entered against her.
AFFIRMED.
HOBSON, Acting C.J., and McNULTY, J., concur.