[No. 31156-2-III.    Division Three.    June 12, 2014.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL DESMOND
BROWNE, *Appellant*.

*Frank L. Cikutovich* (of *Stiley & Cikutovich*), for appellant.

*Steven M. Clem, Prosecuting Attorney,* and *Walter G. Edgar, Deputy,* for respondent.

¶1 KORSMO, J. — The trial court excluded Paul Browne's medical marijuana defense because he had more plants than were permitted by the Washington Administrative Code (WAC). We conclude this was error under the facts of this case and remand the case for a new trial.

## FACTS[1]

¶2 Mr. Browne was the designated medical marijuana provider for his son, Daniel DeHart-Browne. Mr. DeHart-Browne suffers from cyclical vomiting syndrome.[2] The disease would frequently hospitalize him.[3] Mr. Browne was also his son's daily caregiver and saw to his everyday needs. Mr. Browne grew medical marijuana for his son and was typically able to harvest anywhere between a fourth of a pound to a full pound of useable medical marijuana from his annual harvest in September and October.

¶3 Mr. DeHart-Browne and Mr. Browne live in a rural Douglas County location. Mr. DeHart-Browne's mother[4] lives on the same property although in a different structure. In 2008, a drug task force had searched the property pursuant to a warrant and seized marijuana plants. Mr. DeHart-Browne was arrested but was released once he

---

[1] Additional facts relating to the issues addressed in the unpublished portion of this opinion will be related in conjunction with the analysis of each issue.

[2] Cyclical vomiting syndrome appears to be a "debilitating medical condition" under RCW 69.51A.010(6)(f) ("[d]iseases, including anorexia, which result in nausea, vomiting, wasting, appetite loss, cramping, seizures, muscle spasms, or spasticity, when these symptoms are unrelieved by standard treatments or medications").

[3] The record reflects that Mr. DeHart-Browne was hospitalized 30 times during the two years this matter was pending in the trial court.

[4] The record is conflicting whether she and Mr. Browne ever married, although the stipulated facts indicate they are married. It appears that the two do not live together on the property.

showed his medical marijuana authorization. The police returned six plants to Mr. DeHart-Browne along with the marijuana he had drying at the time. Mr. Browne was out of the country at the time of this search.

¶4 On August 20, 2009, Douglas County Sheriff's Deputy Rich Poppie, a "certified marijuana spotter," flew over the property in a fixed wing aircraft and took photographs. The information he supplied to Detective Tim Scott was presented to a court commissioner, who authorized a search of the property. The deputies seized 88[5] growing marijuana plants. The next day the court commissioner authorized the destruction of the plants other than a small sample to be preserved for evidentiary purposes.

¶5 The prosecutor filed a single count of unlawful manufacture of marijuana. Mr. Browne moved to dismiss the charges, arguing that the search warrant affidavit lacked probable cause and that the destruction of the plants violated his due process rights. He attached an affidavit from Gary Ackerson, a cannabis expert. Mr. Ackerson explained that the plants needed to be preserved in order to determine which ones were female plants capable of producing medical marijuana, which ones were "useless male" plants, and the condition of the female plants. In his opinion, the photographs were inadequate to convey the necessary information.

¶6 The defense brought an additional motion for a *Franks*[6] hearing on the basis that the 2009 search warrant affidavit made no mention of the 2008 search and the resulting knowledge of Mr. DeHart-Browne's authorized marijuana use. After a hearing, the court denied the request.

¶7 The court subsequently took up the motion to dismiss. The court denied the motion, ruling that the 15 plant limit

---

[5] Mr. Browne contests this number; he stated that there were only 40 plants and only 15 of those were the ones he was growing for his son. He alleged that the remaining plants belonged to Ms. DeHart and her friend.

[6] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

established in the administrative code included plants at each stage of development and could not be exceeded. Given the size of this grow operation, the defense was not available. Thus, much of Mr. Ackerson's testimony was irrelevant and the destroyed plants therefore had no exculpatory value.

¶8 The court then heard a series of motions in limine from the prosecution. The court ruled that Mr. Ackerson was a qualified "expert on growing medical marijuana" but excluded his testimony because his affidavit had already established he could not opine on the amount of usable marijuana from the seized plants. The court clarified its previous ruling and stated that the WAC did not permit a defendant to overcome the presumptive 15 plant limit with evidence that the patient needed more than that number of plants for necessary medical use. A defendant would be able to present appropriate testimony that a patient's 60-day supply could exceed 24 ounces of marijuana if the amount was medically necessary for the patient.

¶9 Mr. Browne sought discretionary review of these rulings. This court declined to accept interlocutory review. The parties then agreed to a stipulated trial in order to facilitate appellate review. The trial court encouraged the appeal in order to clarify the scope of the medical marijuana affirmative defense.

¶10 The court found Mr. Browne guilty at the stipulated trial. He received a 20-day jail sentence and promptly appealed to this court.

## ANALYSIS

¶11 The sole issue addressed in the published portion of this opinion concerns the court's ruling on the WAC's 15 plant limit. We agree with the appellant that the 15 plant limit can be exceeded when there has been a demonstrated medical need. Accordingly, we reverse and remand for a new trial.

¶12 In 2009, former RCW 69.51A.040 (2007) provided an affirmative defense to the manufacture or use of marijuana by a qualified patient or a designated provider of marijuana. The defense "will be deemed to have" been established "by proof of his or her compliance with the requirements provided in this chapter." Former RCW 69.51A-.040(2). Among the requirements of the chapter was that the patient or provider shall "possess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply." Former RCW 69.51A.040(3)(b).

¶13 At the times relevant to this case, the 60-day supply was defined in the administrative code by the Department of Health. This regulation in pertinent part read:

> (3) Presumptive sixty-day supply.
>
> (a) A qualifying patient and a designated provider may possess a total of no more than twenty-four ounces of useable marijuana, and no more than fifteen plants.
>
> (b) Amounts listed in (a) of this subsection are total amounts of marijuana between both a qualifying patient and a designated provider.
>
> (c) The presumption in this section may be overcome with evidence of a qualifying patient's necessary medical use.

Former WAC 246-75-010(3) (2008).[7] Additionally, the WAC defined "plant" as "any marijuana plant in any stage of growth." Former WAC 246-75-010(2)(b).

¶14 The task presented is to construe the noted language of former WAC 246-75-010(3) that governed at the time of this incident. Appellate courts perform de novo review of questions of statutory and regulatory interpretation. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (statutes); *Skinner v. Civil Serv. Comm'n*, 168 Wn.2d 845, 849, 232 P.3d 558 (2010) (regulations).

---

[7] Former WAC 246-75-010 and former RCW 69.51A.080 (2007) (directing Department of Health to adopt 60-day supply rules) were repealed after the legislature in 2011 codified the presumptive limits established by WAC 246-75--010 in current RCW 69.51A.040 and RCW 69.51A.045.

¶15 The goal of statutory interpretation "is to discern and implement" legislative intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). "Plain meaning may be gleaned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* (quotation omitted). "Where a statute is unambiguous, the court assumes the legislature means what it says and will not engage in statutory construction past the plain meaning of the words." *In re Estate of Jones*, 152 Wn.2d 1, 11, 93 P.3d 147 (2004).

¶16 We discern no ambiguity in this provision. The title of subsection (3) is "presumptive sixty-day supply." Former WAC 246-75-010(3). Subsection (3)(a) expressly defines the 60-day supply in terms of no more than 24 ounces of useable marijuana *and* no more than 15 plants.[8] Thus, a qualifying patient or a qualifying provider may possess both growing plants and processed marijuana. Those figures are the total amounts that provider and patient together may possess. Former WAC 246-75-010(3)(b).

¶17 Subsection (3)(c) then provides an exception, noting that the "presumption in this section" could be "overcome with evidence of a qualifying patient's necessary medical use." Former WAC 246-75-010(3)(c). Nothing in this exception indicates that it was limited to processed marijuana. The presumptive limits of subsection (3)(a) recognize that both plants and processed marijuana can be possessed. By its terms, the necessary use exception of subsection (3)(c) also applies to plants. The trial court erred by limiting the exception solely to harvested marijuana.

¶18 Mr. Browne argues that the exclusion of Mr. Ackerson's testimony exacerbated this error, while the prosecution argues that the error was harmless because Mr. Browne did not have the prescribing doctor available as

---

[8] By defining "plant" in terms of a "grow[ing]" plant, the WAC necessarily distinguished them from harvested or processed plants. Former WAC 246-75-010(2)(b).

a witness to establish that Mr. DeHart-Browne was a qualifying patient. Mr. Browne's counsel stated at oral argument to this court that medical testimony would be needed at trial to establish the affirmative defense. We agree that medical testimony would be essential to establishing the medical need for exceeding the presumptive limits.[9] To meet the exception, there must be a showing of "necessary medical use." Former WAC 246-75-010(3)(c). An appropriate medical expert would appear to be essential in order to opine on the medical necessity of the amount of marijuana used by Mr. DeHart-Browne. ER 702; *Shoberg v. Kelly*, 1 Wn. App. 673, 677, 463 P.2d 280 (1969) (medical expert was necessary and an affidavit of counsel "was not a substitute for expert medical testimony").

¶19 However, we are not in a position to rule on the State's argument. There was no record on this issue because the trial judge struck the defense based on the number of plants.[10] The defense therefore had no opportunity to present its offer of proof concerning medical necessity. In these circumstances, particularly in conjunction with the defense agreement that medical testimony is required, a remand is in order. The State is free to renew its motion in limine and the defense is free to make its offer of proof to the trial judge.

¶20 Mr. Browne also argues that the exclusion of Mr. Ackerson's testimony should be overturned. Since we are remanding the case, we leave this issue, too, to the trial judge. It may be that Mr. Ackerson can supply information connecting the amount of marijuana needed by Mr. DeHart-

---

[9] We do not opine on the necessity of medical testimony for establishing Mr. DeHart-Browne's qualifying patient status.

[10] In a case where there was no defense attempt to establish that the presumptive limits were insufficient, a trial court could strike the affirmative defense when the defendant has too many plants or too much processed marijuana, but that was not this case. In fairness to the trial judge, it should be noted that the defense appeared to be evolving from an original contention that only 15 plants belonged to Mr. Browne to a newer, and not altogether consistent, claim that Mr. Browne needed more than 15 plants to care for his son.

Browne and the number of plants reasonably[11] necessary to produce that amount. However, unless Mr. Ackerson can assist on the medical necessity question, we, too, doubt the relevance of his proposed testimony.

¶21 The conviction is reversed and the case remanded for further proceedings consistent with this opinion.

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BROWN, A.C.J., and FEARING, J., concur.

---

[11] We believe that an objective standard governs this inquiry. The question is not how many plants Mr. Browne needed under his particular circumstances to produce the required amount, but how many plants a reasonably competent farmer would need.