IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31156-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL DESMOND BROWNE, | ) | OPINION PUBLISHED IN PART |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — The trial court excluded Paul Browne's medical marijuana defense because he had more plants than were permitted by the Washington Administrative Code (WAC). We conclude this was error under the facts of this case and remand the case for a new trial.

## FACTS[1]

Mr. Browne was the designated medical marijuana provider for his son, Daniel

---

[1] Additional facts relating to the issues addressed in the unpublished portion of this opinion will be related in conjunction with the analysis of each issue.

DeHart-Browne. Mr. DeHart-Browne suffers from cyclical vomiting syndrome.[2] The disease would frequently hospitalize him.[3] Mr. Browne was also his son's daily caregiver and saw to his everyday needs. Mr. Browne grew medical marijuana for his son and was typically able to harvest anywhere between a fourth of a pound to a full pound of useable medical marijuana from his annual harvest in September and October.

Mr. DeHart-Browne and Mr. Browne live in a rural Douglas County location. Mr. DeHart-Browne's mother[4] lives on the same property although in a different structure. In 2008, a drug task force had searched the property pursuant to a warrant and seized marijuana plants. Mr. DeHart-Browne was arrested, but was released once he showed his medical marijuana authorization. The police returned six plants to Mr. DeHart-Browne along with the marijuana he had drying at the time. Mr. Browne was out of the country at the time of this search.

On August 20, 2009, Douglas County Sheriff's Deputy Rich Poppie, a "certified marijuana spotter," flew over the property in a fixed wing aircraft and took photographs. The information he supplied to Detective Tim Scott was presented to a court

---

[2] Cyclical vomiting syndrome appears to be a "debilitating medical condition" under RCW 69.51A.010(6)(f) ("Diseases, including anorexia, which result in nausea, vomiting, wasting, appetite loss, cramping, seizures, muscle spasms, or spasticity, when these symptoms are unrelieved by standard treatments or medications").

[3] The record reflects that Mr. DeHart-Browne was hospitalized 30 times during the two years this matter was pending in the trial court.

[4] The record is conflicting whether she and Mr. Browne ever married, although the stipulated facts indicate they are married. It appears that the two do not live together on

2

commissioner who authorized a search of the property. The deputies seized 88[5] growing

marijuana plants. The next day the court commissioner authorized the destruction of the

plants other than a small sample to be preserved for evidentiary purposes.

The prosecutor filed a single count of unlawful manufacture of marijuana. Mr.

Browne moved to dismiss the charges, arguing that the search warrant affidavit lacked

probable cause and that the destruction of the plants violated his due process rights. He

attached an affidavit from Gary Ackerson, a cannabis expert. Mr. Ackerson explained

that the plants needed to be preserved in order to determine which ones were female

plants capable of producing medical marijuana, which ones were "useless male" plants,

and the condition of the female plants. In his opinion, the photographs were inadequate

to convey the necessary information.

The defense brought an additional motion for a *Franks*[6] hearing on the basis that

the 2009 search warrant affidavit made no mention of the 2008 search and the resulting

knowledge of Mr. DeHart-Browne's authorized marijuana use. After a hearing, the court

denied the request.

The court subsequently took up the motion to dismiss. The court denied the

---

the property.

[5] Mr. Browne contests this number; he stated that there were only 40 plants and only 15 of those were the ones he was growing for his son. He alleged that the remaining plants belonged to Ms. DeHart and her friend.

[6] *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978).

motion, ruling that the 15 plant limit established in the administrative code included plants at each stage of development and could not be exceeded. Given the size of this grow operation, the defense was not available. Thus, much of Mr. Ackerson's testimony was irrelevant and the destroyed plants therefore had no exculpatory value.

The court then heard a series of motions in limine from the prosecution. The court ruled that Mr. Ackerson was a qualified "expert on growing medical marijuana," but excluded his testimony because his affidavit had already established he could not opine on the amount of usable marijuana from the seized plants. The court clarified its previous ruling and stated that the WAC did not permit a defendant to overcome the presumptive 15 plant limit with evidence that the patient needed more than that number of plants for necessary medical use. A defendant would be able to present appropriate testimony that a patient's 60-day supply could exceed 24 ounces of marijuana if the amount was medically necessary for the patient.

Mr. Browne sought discretionary review of these rulings. This court declined to accept interlocutory review. The parties then agreed to a stipulated trial in order to facilitate appellate review. The trial court encouraged the appeal in order to clarify the scope of the medical marijuana affirmative defense.

The court found Mr. Browne guilty at the stipulated trial. He received a 20-day jail sentence and promptly appealed to this court.

4

ANALYSIS

The sole issue addressed in the published portion of this opinion concern the court's ruling on the WAC's 15 plant limit. We agree with the appellant that the 15 plant limit can be exceeded when there has been a demonstrated medical need. Accordingly, we reverse and remand for a new trial.

In 2009, former RCW 69.51A.040 provided an affirmative defense to the manufacture or use of marijuana by a qualified patient or a designated provider of marijuana. The defense "will be deemed to have" been established "by proof of his or her compliance with the requirements provided in this chapter." Former RCW 69.51A.040(2) (2007). Among the requirements of the chapter was that the patient or provider shall "possess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply." Former RCW 69.51A.040(3)(b) (2007).

At the times relevant to this case, the 60-day supply was defined in the administrative code by the Department of Health. This regulation in pertinent part read:

> (3) Presumptive sixty-day supply.
>     (a) A qualifying patient and a designated provider may possess a total of no more than twenty-four ounces of useable marijuana, and no more than fifteen plants.
>     (b) Amounts listed in (a) of this subsection are total amounts of marijuana between both a qualifying patient and a designated provider.
>     (c) The presumption in this section may be overcome with evidence of a qualifying patient's necessary medical use.

5

Former WAC 246-75-010(3) (2008).[7] Additionally, the WAC defined "plant" as "any marijuana plant in any stage of growth." Former WAC 246-75-010(2)(b) (2008).

The task presented is to construe the noted language of former WAC 246-75-010(3) that governed at the time of this incident. Appellate courts perform de novo review of questions of statutory and regulatory interpretation. *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005) (statutes); *Skinner v. Civil Serv. Comm'n*, 168 Wn.2d 845, 849, 232 P.3d 558 (2010) (regulations).

The goal of statutory interpretation "is to discern and implement" legislative intent. *Lowy v. PeaceHealth*, 174 Wn.2d 769, 779, 280 P.3d 1078 (2012). "Plain meaning may be gleaned from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." *Id.* (quotation omitted). "Where a statute is unambiguous, the court assumes the legislature means what it says and will not engage in statutory construction past the plain meaning of the words." *In re Estate of Jones*, 152 Wn.2d 1, 11, 93 P.3d 147 (2004).

We discern no ambiguity in this provision. The title of subsection three is "presumptive sixty-day supply." Subsection (3)(a) expressly defines the 60-day supply in

---

[7] WAC 246-75-010 and RCW 69.51A.080 (directing department of health to adopt sixty-day supply rules) (2007) were repealed after the legislature in 2011 codified the presumptive limits established by WAC 246-75-010 in current RCW 69.51A.040 and RCW 69.51A.045.

terms of no more than 24 ounces of useable marijuana *and* no more than 15 plants.[8]

Thus, a qualifying patient or a qualifying provider may possess both growing plants and

processed marijuana. Those figures are the total amounts that provider and patient

together may possess. Former subsection (3)(b).

Subsection (3)(c) then provides an exception, noting that the "presumption in this

section" could be "overcome with evidence of a qualifying patient's necessary medical

use." Nothing in this exception indicates that it was limited to processed marijuana. The

presumptive limits of subsection (3)(a) recognize that both plants and processed

marijuana can be possessed. By its terms, the necessary use exception of subsection

(3)(c) also applies to plants. The trial court erred by limiting the exception solely to

harvested marijuana.

Mr. Browne argues that the exclusion of Mr. Ackerson's testimony exacerbated

this error, while the prosecution argues that the error was harmless because Mr. Browne

did not have the prescribing doctor available as a witness to establish that Mr. DeHart-

Browne was a qualifying patient. Mr. Browne's counsel stated at oral argument to this

court that medical testimony would be needed at trial to establish the affirmative defense.

We agree that medical testimony would be essential to establishing the medical need for

---

[8] By defining "plant" in terms of a "growing" plant, the WAC necessarily distinguished them from harvested or processed plants. Former WAC 246-75-010(2)(b) (2008).

7

exceeding the presumptive limits.[9] To meet the exception, there must be a showing of "necessary medical use." An appropriate medical expert would appear to be essential in order to opine on the medical necessity of the amount of marijuana used by Mr. DeHart-Browne. ER 702; *Shoberg v. Kelly*, 1 Wn. App. 673, 677, 463 P.2d 280 (1969) (medical expert was necessary and an affidavit of counsel "was not a substitute for expert medical testimony.").

However, we are not in a position to rule on the State's argument. There was no record on this issue because the trial judge struck the defense based on the number of plants.[10] The defense therefore had no opportunity to present its offer of proof concerning medical necessity. In these circumstances, particularly in conjunction with the defense agreement that medical testimony is required, a remand is in order. The State is free to renew its motion in limine and the defense is free to make its offer of proof to the trial judge.

Mr. Browne also argues that the exclusion of Mr. Ackerson's testimony should be overturned. Since we are remanding the case, we leave this issue, too, to the trial judge.

---

[9] We do not opine on the necessity of medical testimony for establishing Mr. DeHart-Browne's qualifying patient status.

[10] In a case where there was no defense attempt to establish that the presumptive limits were insufficient, a trial court could strike the affirmative defense when the defendant has too many plants or too much processed marijuana, but that was not this case. In fairness to the trial judge, it should be noted that the defense appeared to be evolving from an original contention that only 15 plants belonged to Mr. Browne to a newer, and not altogether consistent, claim that Mr. Browne needed more than 15 plants

8

It may be that Mr. Ackerson can supply information connecting the amount of marijuana needed by Mr. DeHart-Browne and the number of plants reasonably[11] necessary to produce that amount. However, unless Mr. Ackerson can assist on the medical necessity question, we, too, doubt the relevance of his proposed testimony.

The conviction is reversed and the case remanded for further proceedings consistent with this opinion.

A majority of the panel having determined that only the forgoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

Mr. Browne also presents two challenges to the search warrant as well as his due process claim concerning the destruction of the marijuana plants. We conclude that none of these claims has merit.

*Probable Cause*

Mr. Browne argues that the affidavit was devoid of probable cause because Deputy Poppie's experience and training were not provided to the issuing magistrate. The affidavit provided a basis for the deputy's observations and was sufficient.

---

to care for his son.

[11] We believe that an objective standard governs this inquiry. The question is not how many plants Mr. Browne needed under his particular circumstances to produce the required amount, but how many plants a reasonably competent farmer would need.

Long-settled standards govern review of a search warrant. A warrant can only issue upon a showing of probable cause. *State v. Chamberlin*, 161 Wn.2d 30, 41, 162 P.3d 389 (2007). The existence of probable cause is a legal question which a reviewing court considers de novo. *Id.* at 40. Probable cause to issue a warrant is established if the supporting affidavit sets forth "facts sufficient for a reasonable person to conclude the defendant probably is involved in criminal activity." *State v. Huft*, 106 Wn.2d 206, 209, 720 P.2d 838 (1986).

"Great deference is accorded the issuing magistrate's determination of probable cause." *State v. Cord*, 103 Wn.2d 361, 366, 693 P.2d 81 (1985). Even if the propriety of issuing the warrant was debatable, the deference due the magistrate's decision would tip the balance in favor of upholding the warrant. *State v. Jackson*, 102 Wn.2d 432, 446, 688 P.2d 136 (1984). In light of the deference owed the magistrate's decision, the proper question on review is whether the magistrate *could* draw the connection, not whether she *should* do so.

This last observation answers one of Mr. Browne's contentions. He claims that Deputy Poppie could apparently see much better than the average human, thus making him a special instrument who must be disregarded due to his unnatural abilities. He cites no relevant authority for this proposition and we are aware of none. The frailties of human eyesight are well known to the human magistrates who issue warrants. Whether

or not to credit observations are matters within the discretion of the issuing magistrate. The great deference accorded that magistrate puts short shrift to this claim.

Mr. Browne also argues that the warrant is defective for not discussing Deputy Poppie's reliability or experience and training. He also considers Poppie's information hearsay. However, a law enforcement officer is presumed reliable. *State v. Matlock*, 27 Wn. App. 152, 155, 616 P.2d 684 (1980). Hearsay is permitted in a search warrant. CrR 2.3(c); CrRLJ 2.3(c). While it may have been better practice to have detailed Deputy Poppie's experience in identifying marijuana from a distance or via an airplane, the weight to be given the information, which was accompanied by color pictures, was a matter for the issuing magistrate to consider. *See State v. Creelman*, 75 Wn. App. 490, 496, 878 P.2d 492 (1994). The affidavit supplied a factual basis for Deputy Poppie's opinion that the plants were marijuana. That is all that is needed. *State v. Seagull*, 95 Wn.2d 898, 907, 632 P.2d 44 (1981).

The search warrant affidavit provided probable cause to believe marijuana could be found at the designated location. The magistrate did not abuse his discretion in issuing the warrant.

*Franks Hearing*

Mr. Browne also argues that the trial court should have granted him a *Franks* hearing to consider the knowledge gained in the 2008 search and to contest the distance

11

at which Deputy Poppie observed the grow operation. The first claim founders on relevance grounds, while the second was not essential to probable cause.

In limited circumstances, the information contained in or omitted from a search warrant can be challenged. *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978). When information was deliberately or recklessly excluded from an affidavit, a court is to add the information to the warrant and determine if probable cause still exists. *Id.* at 171-72. If there is still probable cause, the motion will be denied.[12] *Id.* at 172. If there no longer is probable cause, then the challenger is entitled to a hearing to attempt to establish the contention that the information was known to police and required to be included in the affidavit. *Id.*

Mr. Browne contends that the results of the 2008 search that showed Mr. DeHart-Browne was a medical marijuana user should have been included in the 2009 affidavit. The evidence in the record does not show that the county sheriffs who obtained the 2009 search warrant knew of the 2008 warrant obtained by a regional drug task force. However, even assuming that the Douglas County deputies knew or should have known about that search, his argument still fails because that information would not vitiate probable cause.

---

[12] The same approach applies to false information that was deliberately or recklessly included in the affidavit. *Franks*, 438 U.S. at 171-72.

A series of cases has concluded that the existence of the medical marijuana affirmative defense does not negate probable cause. *State v. Fry*, 168 Wn.2d 1, 228 P.3d 1 (2010); *State v. Ellis*, ___ Wn. App.___, 315 P.3d 1170 (2014); *State v. Reis*, ___ Wn. App. ___, ___ P.3d ___ (No. 69911-3-I, Mar. 31, 2014). Thus, the 2008 search information was irrelevant to whether probable cause existed to search in 2009. The trial court correctly determined that there was no need for a *Franks* hearing.

Mr. Browne also argues that the court should have held a *Franks* hearing to determine the altitude from which Deputy Poppie observed the marijuana. However, this is not a *Franks* issue. The Washington Supreme Court ruled in *Cord* that while it is preferable to include the altitude from which an aerial observation was made, the absence of the information does not detract from the magistrate's probable cause determination. 103 Wn.2d at 366. The absence of the overflight altitude information from the search warrant was not a basis for holding a *Franks* hearing.

The trial court correctly denied the motion for a *Franks* hearing.

*Due Process*

Mr. Browne also argues that the trial court erred in denying his motion to dismiss due to the destruction of the marijuana plants. Because Mr. Browne never established that the officers acted in bad faith, the trial court correctly denied this motion.

Once again, very well established case law governs our review. The State has a duty to preserve evidence that is both material and exculpatory. *State v. Donahue*, 105 Wn.

13

App. 67, 77-78, 18 P.3d 608, *review denied*, 144 Wn.2d 1010 (2001). When dealing with evidence that is not exculpatory, but only potentially useful to the defense, Washington courts apply the federal analysis found in *Arizona v. Youngblood*, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988). *See State v. Straka*, 116 Wn.2d 859, 810 P.2d 888 (1991). Under *Youngblood*, a defendant must establish that evidence was destroyed (or not preserved) because of *bad faith* on the part of the government. If bad faith is not established, the due process inquiry is at an end. 102 L. Ed. 2d at 289. In addition, there is no police duty to seek out or test evidence. *Donahue*, 105 Wn. App. at 77 (citing cases).

Mr. Browne cites to federal authorities that have found bad faith in the failure to properly document the number of marijuana plants before destroying them. *E.g., United States v. Gallant*, 25 F.3d 36, 38-39 (1st Cir. 1994); *United States v. Scoggins*, 992 F.2d 164, 167 (8th Cir. 1993); *United States v. Smith*, 966 F.2d 1045, 1049 (6th Cir. 1992); *United States v. Belden*, 957 F.2d 671, 673 (9th Cir. 1992). However, this is primarily due to the fact that under federal marijuana laws, the number of plants dictates the minimum statutory penalties. 21 U.S.C. § 841(b)(1)(A)(vii), (B)(vii). Because of this statute, the Drug Enforcement Administration (DEA) manual requires agents, prior to destruction, to photograph the roots of the plants in such a way that an accurate count can be taken from the photographs. *United States v. Montgomery*, 676 F.Supp.2d 1218, 1233 n.27 (D. Kan. 2009) (quoting DEA Agents Manual § 6662.69). Understandably, courts

14

could infer from the failure to follow required practices that the agents acted in bad faith, particularly where the action would impact the minimum sentence.

Washington, however, does not have a similar statutory scheme. The punishment for growing one marijuana plant is the same as for growing many. The number of plants is only potentially at issue if the affirmative defense of medical marijuana production is raised. Even at that, the relevant number is 15 plants. Once that figure is exceeded, which both parties agreed was the case here, the exact number of plants cannot reasonably be expected to be at issue.

We are aware of no government agency that preserves seized marijuana plants other than a small quantity for testing purposes. The large size of mature plants and the fact that they decay makes long-term storage problematic at best. Thus, there simply is little reason for law enforcement to believe it has any preservation obligations in most instances.

Here, there clearly was no due process violation in destroying, by court order, the marijuana plants. The fact that Mr. Browne disagreed with the plant count (and apparently did so at the time of the search) did not impose a duty on law enforcement to document their assessment in a clearer manner. If anything, the alleged defects in the photography worked to Mr. Browne's benefit rather than his detriment by allowing him to challenge the basis for the deputies' enumeration.

15

No. 31156-2-III
*State v. Browne*

Similarly, the inability of Mr. Ackerson to opine on everything he wanted to discuss did not create a duty for the sheriff's office to better document the plants. As noted previously, we believe an objective standard applies to the medical necessity issue. Once a medical expert determines the amount of marijuana Mr. DeHart-Browne needed, Mr. Ackerson was free, if the matter was within his expertise, to explain the number of plants reasonably necessary to produce that amount. The condition of Mr. Browne's plants was not relevant to that calculation.

At most, Mr. Browne showed that documentation of the number of plants was potentially useful to him. He has not shown that the deputies acted in bad faith in their documentation efforts. The due process argument is without merit.

Reversed and remanded.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.

16